Argued and submitted June 16, affirmed September 9, reconsideration denied December 18, 1987, petition for review denied January 20, 1988 (305 Or 21)

GREEN,
*Respondent,*

*v.*

DENNEY,
dba J. C. Quarter Horse Ranch,
*Respondent,*

*and*

FORD MOTOR COMPANY,
*Appellant.*

(A8304-02482; CA A37066)

742 P2d 639

John R. Faust, Jr., Portland, argued the cause for appellant. On the briefs were Ridgway K. Foley, Jr., P.C., Mildred J. Carmack, Roland F. Banks, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent Steven Green. With him on the brief were Jan Thomas Baisch and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Robert E. Maloney, Jr., Portland, waived appearance for respondent Clemens L. Denney dba J.C. Quarter Horse Ranch.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is a product liability action arising out of a collision between a 1980 Ford Pinto automobile and a horse. Defendant Ford Motor Company (defendant) appeals the judgment in favor of plaintiff. We affirm.

On the evening of March 29, 1982, plaintiff was driving his 1980 Pinto at about 45-50 miles per hour on Highway 224 near Estacada. His wife, Kelly Sue, was in the front passenger seat. A horse suddenly appeared in front of the car, and plaintiff had no time to swerve or turn. The car's front bumper hit the horse's lower front legs, throwing the horse up over the car's hood, breaking the windshield and collapsing the roof rail (called the "header") above the windshield on the passenger side of the car. The roof collapsed, killing plaintiff's wife instantly. The horse slid over the top of the car and fell to the ground behind it. Plaintiff and his son, who was sitting in the back seat, were unhurt. Plaintiff's young daughter, who was sitting on her mother's lap, sustained minor cuts and bruises.

Plaintiff brought this action for the death of his wife against the owner of the horse, Denney, and defendant. Plaintiff settled with Denney before trial. In his action against defendant, plaintiff alleged that the faulty design of the Pinto roof structure caused the fatal injury.

Defendant assigns error to the court's denial of its motion for directed verdict. We consider the evidence in the light most favorable to plaintiff and must affirm unless we can say that there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's claim. *Brown v. J.C. Penney,* 297 Or 695, 705, 688 P2d 811 (1984). In deciding whether the evidence of defective design is sufficient to make a jury question, a trial court must balance the utility of the risk created by the unsafe feature of the product against the magnitude of the risk. *Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 464, 525 P2d 125 (1974). In doing so, it should consider certain factors, *inter alia,* the product's usefulness, its safety and the feasibility of alternatives.[1]

---

[1] Factors which should be considered by the court are:

" '(1) The usefulness and desirability of the product—its utility to the user

The parties' primary disagreement is about the safety factor, *i.e.,* the likelihood that the product will cause injury. Defendant argues that the accident was freak and bizarre in that it involved an unusual concentration of forces and an abnormal load on the header, which resulted in the failure of the roof structure. It argues that the support structure is designed to work as a whole but that the horse hit the header at a point where the other roof components could not contribute to its support. According to defendant, plaintiff produced no evidence that would allow the jury to determine that a reasonable manufacturer, with knowledge of the risk that a load would fall on the roof in the particular manner that it did, would have designed the header differently. In sum, defendant contends that the design was not defective, because the force and impact of the accident were so unusual that it could not have reasonably been anticipated.

■   Product liability for defective design does not extend to cases where the risk of injury from the product's failure is so remote that a reasonable manufacturer would not consider it in design decisions. *See Wilson v. Piper Aircraft Corporation,* 282 Or 61, 66, 68, 577 P2d 1322 (1978). Plaintiff offered evidence that collisions with large animals, including horses, are common and foreseeable. Defendant countered that it was not foreseeable that such a collision would produce an impact on the roof concentrated at a particular point rather than being more evenly distributed. The problem with that argument is

---

and to the public as a whole.

" '(2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

" '(3) The availability of a substitute product which would meet the same need and not be as unsafe.

" '(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

" '(5) The user's ability to avoid danger by the exercise of care in the use of the product.

" '(6) The user's anticipated awareness of the dangers inherent in the product an their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

" '(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.' " *Roach v. Kononen/Ford Motor Co., supra,* 269 Or at 464. (Quoting Wade, "On the Nature of Strict Tort Liability for Products," 44 Miss L J 825, 837-38 (1973)).

that its converse is equally true: It was just as unpredictable that the impact from a collison would fall evenly on the entire roof rather than land with greater force on its weakest part. That the horse landed with its full weight on the header did not make the accident any more a freak occurrence than if the weight had been distributed evenly.

There was evidence that the Pinto's "halo" roof design was unusual, because it eliminated numerous welds and the support beam across the roof, reduced the thickness of the metal and interrupted its integrity with a "lighting" hole in the center panel. Plaintiff's expert testified that reinforcement of the roof was technically and economically feasible and would have prevented its deformation so that it would not come into contact with a passenger's head. Plaintiff also introduced expert testimony that the amount of energy generated by the fall of the horse on the roof did not exceed the amount that it was required to sustain to pass a federal safety test. Other evidence was presented that defendant had experienced difficulties in testing the Pinto roof design.[2] We conclude that the accident and the manner of injury were not unforeseeable, as a matter of law, and that plaintiff presented sufficient evidence of defective design to justify submission of the case to the jury.

■ ■ Defendant next assigns as error the admission of expert testimony by a former employe who had worked for defendant in a design division during the early 1970's, when Pinto cars were first manufactured.[3] He testified that defendant had a practice of concealing unfavorable test results, repeating tests until one car finally passed the federal standards and then publishing only the passing result. He further testified about technical aspects of the roof design and the feasibility of safer alternatives. Defendant objected to the entire testimony on the basis of relevancy and prejudice.[4]

---

[2] Plaintiff's expert testified that tests were done on Pinto cars and that they failed. For example, in a series of frontal barrier crash tests during the 1970's, the force of dummies in the front passenger seat as they strained against the seat belts pulled on the roof rail and caused it to buckle and crease. Defendant simply removed the dummies and continued the tests.

[3] Defendant also assigns error to the court's failure to strike the testimony or grant a mistrial. If the evidence was relevant, those motions were properly denied.

[4] Although plaintiff contends that defendant did not preserve error as to the prejudice ground, we consider defendant's objection at trial that the testimony would "poison the jury's mind" sufficient to preserve error.

Defendant's irrelevancy argument is based on the supposition that the expert could not testify about the 1980 Pinto because he had left defendant's employ at least two years before the 1980 Pinto was produced. Although it is true that the witness had no personal knowledge of the 1980 Pinto testing, he had first hand knowledge of the unsuccessful tests performed on the Pinto roof between 1971 and 1978. He further testified that the "halo" roof panel, as it existed while he worked for defendant, was basically unchanged throughout the 1980's. Accordingly, the evidence was relevant to prove that the alleged design defects of which he did have personal knowledge continued to exist in plaintiff's car. It was also relevant to the feasibility and cost of design alternatives. *See Wilson v. Piper Aircraft Corporation, supra,* 282 Or at 67-68. The evidence that defendant had concealed unfavorable test results was relevant to prove defendant's actual knowledge of weakness in the roof design. Although in product design defect cases, the manufacturer is "assumed" to know the condition of its product, *Roach v. Kononen/Ford Motor Co., supra,* 269 Or at 464, that does not make evidence of actual knowledge irrelevant. The objection was to the totality of the evidence; if there was any irrelevant matter in the testimony, defendant failed to preserve error by specifically objecting to that evidence. *Brown v. J.C. Penney Co., supra,* 297 Or at 705.

■ With respect to defendant's claim that the prejudicial effect of the evidence outweighed any relevancy, the trial judge had discretion to decide whether evidence should be excluded. The latitude is broad. *Carlson v. Piper Aircraft Corp.,* 57 Or App 695, 701, 646 P2d 43, *rev den* 293 Or 801 (1982). The evidence was relevant to plaintiff's proof of a design defect, and we find no abuse of discretion.

■ Defendant next assigns error to the admission of evidence concerning "psychological effects" of plaintiff's wife's death on plaintiff and his children and asserts that plaintiff cannot prove the mental suffering of the survivors. We agree that under ORS 30.020 such damages are not recoverable in a wrongful death action. However, the only objection made at trial was that plaintiff was not entitled to prove damages sustained by the spouse and children of the decedent, because they were not plaintiffs. Although it is true that they are not plaintiffs, they are beneficiaries of the estate's cause of action. Under ORS 30.020(2)(d), the estate may recover damages

which "justly, fairly and reasonably [compensate] the decedent's spouse, children and parents for pecuniary loss and for loss of the society, companionship and services of the decedent * * *." Moreover, evidence of grief and emotional reactions was relevant to the existence and extent of the claimed loss of society and companionship, for which damages are recoverable. Defendant could have, but did not, request a jury instruction limiting the purpose for which the evidence could be considered. The trial judge was not required to give that instruction unless requested. *Radar v. Gibbons and Reed Company,* 261 Or 354, 362, 494 P2d 412 (1972). It was not error to admit the evidence.

■ Defendant's next assignment is that the court improperly limited its cross-examination of plaintiff's expert witness. Plaintiff called an economist to compute the pecuniary loss to the estate. Defendant was not permitted to ask on cross-examination whether the expert had based his opinion on the assumption that Steven Green would remain single the rest of his life. The Supreme Court has held that evidence of actual remarriage is not admissible to mitigate damages in wrongful death cases, because it is speculative whether and to what extent remarriage would affect damages. *Wilson v. Piper Aircraft Corporation, supra,* 282 Or at 79. It follows that it is even more speculative if the person has not actually remarried. We are not at liberty to reexamine the rule first announced in *Prauss v. Adamski,* 195 Or 1, 244 P2d 598 (1952). It was proper to exclude defendant's inquiry.

■ There is no merit to defendants' claim that it is entitled to a new trial because the trial judge refused to instruct the jury that the award is not taxable. *See Stovall v. Perius,* 61 Or App 650, 660, 659 P2d 393, *rev den* 294 Or 792 (1983).

Affirmed.[5]

---

[5] Defendant assigns other errors, but our disposition makes it unnecessary to discuss them.