896 F.2d 949
 29 Fed. R. Evid. Serv. 1342
 UNITED STATES AVIATION UNDERWRITERS, INC., Plaintiff-Counter
Defendant-Appellant,
v.
OLYMPIA WINGS, INC., et al., Defendants-Counter Plaintiffs-Appellees,
v.
AETNA CASUALTY, et al., Counter-Defendants-Appellants.
 No. 88-2699.
 United States Court of Appeals,
Fifth Circuit.
 March 21, 1990.
Rehearing and Rehearing En Banc Denied May 7, 1990.
 
 Ralph I. Miller, Frank Finn, and Rachelle Hoffman Glazer, Thompson & Knight, Dallas, Tex., Richard M. Sharp, Nancy B. Stone, and Bruce C. Swartz, Washington, D.C., for appellants.
 Robert L. Collins, and Luis A. Vallejo, Houston, Tex., for Olympia Wings, Inc., et al.
 Mark A. Hovenkamp and George M. Fleming, Houston, Tex., for Carol Faunce.
 Harold Lloyd, Houston, Tex., David W. Holman and Craig Lewis, Fisher & Gallagher, Houston, Tex., and Tom Davis, Byrd, Davis & Eisenberg, Austin, Tex., for Susan Marney, et al.
 Appeals from the United States District Court for the Southern District of Texas.
 Before DAVIS and DUHE, Circuit Judges, and LITTLE, District Judge.[1]
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 The principal disputes in this litigation, which followed an airplane crash, revolve around the insurer's denial of coverage. During the pendency of litigation the liability insurer, United States Aviation Underwriters (USAU), declined to provide an unqualified defense and filed a declaratory judgment challenging coverage. Less than a month later, the insured, Olympia Wings, agreed to entry of a consent judgment against it and in favor of the survivors of Ronald Marney, a victim of the crash, in an amount equal to the liability policy limits. Following trial, the district court entered judgment decreeing that USAU afforded coverage to Olympia Wings for the claims arising out of the plane crash and that the consent judgment was enforceable against USAU. USAU challenges both of these determinations. We affirm the district court's determination of coverage but conclude that USAU was entitled to challenge the reasonableness of the damages in the consent judgment. Accordingly we vacate and remand.I.
 
 
 2
 Olympia Wings, Inc. owned and operated a Merlin aircraft and procured a liability insurance policy covering the maintenance and operation of that aircraft from USAU with a liability limit of $20 million. In September 1983, Ronald Marney, one of the owners of Olympia Wings, was flying in a Baron aircraft when it crashed, killing Marney and the pilot. The Baron aircraft was owned by Power Pak Co., Inc., and was covered by a $5 million liability policy issued to the owner by U.S. Fire Insurance Company. Olympia Wings sought coverage for operation of the Baron aircraft under a clause in USAU's policy covering any aircraft temporarily used by Olympia Wings as a substitute aircraft when the Merlin was in need of servicing or repair.
 
 
 3
 In late 1984, Marney's estate and survivors (the Marneys) filed a wrongful death action against Olympia Wings and the executrix of the pilot's estate.
 
 
 4
 Shortly after the Marney suit was filed, USAU received information that suggested the Merlin was operational at the time of the accident, which, if true, arguably allowed USAU to avoid coverage and contradicted representations by the surviving owners of Olympia Wings. To preserve its right to contest coverage, USAU notified Olympia Wings that it would provide a defense in the wrongful death case only under a reservation of rights to challenge coverage after the conclusion of the wrongful death litigation. Olympia Wings rejected USAU's offer and demanded that USAU provide an unconditional defense or none at all. USAU instructed its counsel to withdraw.
 
 
 5
 USAU then filed the present declaratory judgment action seeking to determine whether coverage existed under its policy for this accident, and whether it had a duty to defend Olympia Wings or the pilot's executrix. USAU named as defendants Olympia Wings, the Marneys, the pilot's executrix, the surviving owners of Olympia Wings and a mechanic employed by Olympia Wings.
 
 
 6
 Shortly after USAU's action was filed, the Marneys settled their wrongful death claim against Olympia Wings and the executrix of the pilot's estate. Olympia Wings agreed to entry of a consent judgment against it and in favor of the Marneys for $25 million; the Marneys agreed not to execute on the agreed settlement except to the extent that recovery could be had under insurance policies issued by U.S. Fire and USAU. A consent judgment approving the terms of the settlement was entered by the Texas state court. The consent judgment recited that the amount of the settlement was "in all things reasonable," and that "[n]o fraud or collusion has occurred in the settlement of the case, the rendition of this judgment, or in the circumstances surrounding the same."
 
 
 7
 Neither USAU nor U.S. Fire was a party to the consent judgment or the underlying state court proceeding. U.S. Fire had sought without success to intervene in the wrongful death case before the consent judgment was entered.
 
 
 8
 Approximately six months after the entry of the consent judgment, U.S. Fire paid $3,425,000 to the Marneys, who executed a full release in favor of U.S. Fire. The Marneys also reduced their judgment against Olympia Wings to $20 million, which was the amount of USAU's policy limit.
 
 
 9
 After the settlement with U.S. Fire, the Marneys amended their pleadings in the declaratory judgment action to deny USAU's allegations that the wrongful death consent judgment with Olympia Wings was unreasonable and collusive, and to enforce the $20 million consent judgment against USAU. Olympia Wings, the surviving Olympia Wings owners, the Olympia Wings mechanic, and the pilot's executrix asserted counterclaims against USAU seeking damages for USAU's bad faith refusal to unconditionally defend Olympia Wings. USAU also sought damages from the Olympia Wings owners and mechanic because of their fraudulent representations about the condition of the Merlin aircraft. These claims were mutually released before trial. All that remained was USAU's declaratory judgment action against Olympia Wings, the Marneys, and the pilot's executrix.
 
 
 10
 Before trial, USAU contended that it was entitled to take discovery concerning the circumstances under which Olympia Wings and the Marneys had entered into the consent judgment. USAU further contended that it could not be bound by the consent judgment under Texas law and principles of due process, because the $20 million sum was arrived at through fraud and collusion and bore no relationship to the actual recoverable damages. The district court barred USAU from questioning the reasonableness or fraudulent nature of the consent judgment, and barred USAU from taking discovery on the subject.
 
 
 11
 USAU again contended at trial that it was not bound by the amount of the consent judgment. In its final judgment the district court reiterated its earlier holding and ruled that because the consent judgment recited that the court reviewed the settlement and found it reasonable, USAU could not collaterally attack the consent judgment.
 
 
 12
 When the declaratory judgment action was tried in the district court, the fact issue on which coverage depended was submitted to a jury, which decided the issue against USAU. The jury found that the Baron aircraft was being used as a replacement for the out-of-service Merlin aircraft and therefore coverage existed. The district court then entered a $20 million judgment, together with interest, against USAU and in favor of the Marneys.
 
 
 13
 USAU contends on appeal that the district court erred in ruling that (1) USAU was bound by the amount of the consent judgment rendered against Olympia Wings and (2) USAU covered the operation of the Baron aircraft. We consider each argument in turn.
 
 II.
 
 14
 We consider first the district court's determination that the $20 million consent judgment rendered in the Marneys' state court action against Olympia Wings is enforceable against Olympia Wings' insurer USAU.
 
 
 15
 As a federal court exercising diversity jurisdiction, this court is bound to follow the substantive law of Texas as declared by its supreme court. Haught v. Maceluch, 681 F.2d 291, 295 (5th Cir.1982); Cole v. Elliott Equipment Corp., 653 F.2d 1031, 1034 (5th Cir.1981). We have had two occasions to consider the Texas law on the issue now before us. We begin with an examination of those cases after which we will review the recent Texas Supreme Court decision on the subject.
 
 
 16
 In Rhodes v. Chicago Ins. Co., 719 F.2d 116 (5th Cir.1983), Rhodes sued Shirley for Shirley's negligence and misconduct allegedly committed during his personnel and guidance counselling sessions with Rhodes. Shirley notified Chicago of the suit and Chicago, after initially refusing to defend Shirley, ultimately agreed to defend Shirley under a reservation of rights agreement in which Chicago had the right to deny coverage after the termination of the initial litigation. Shirley refused this qualified tender of defense and proceeded to furnish his own defense. Shirley finally settled with Rhodes for $200,000 and that settlement was approved by the state court. Rhodes then sued the insurer, Chicago Insurance, seeking payment of the assessed damages. The district court granted summary judgment for the insurer. On appeal, we addressed whether the insurer had a duty to defend, whether that duty was breached and the consequences of any breach.
 
 
 17
 The court explained the rights of the insurer and insured if the insurer tendered a defense to its insured under a reservation of rights agreement:
 
 
 18
 If Chicago acted properly in tendering a defense ... there was no breach of its duty to defend. Shirley was then free to refuse the [qualified] tender and to defend the suit on its own, unrestricted by conditions in the policy. Chicago's duty to pay, however, would then cease to be coextensive with its duty to defend; Chicago would have a duty to pay only to the extent that the damages assessed were predicated on misconduct covered by the policy and upon a showing that the settlement was reasonable and prudent.
 
 
 19
 Id. at 121. We concluded that "If the insurer properly reserved its rights and the insured elected to pursue his own defense, the insurer is bound to pay damages which resulted from covered conduct and which were reasonable and prudent, up to the policy limits." Id. at 121. We remanded for a determination of whether any duty to defend arose, and if so whether the duty was breached. "If the reservation of rights was proper, the damages must be apportioned between covered conduct and uncovered conduct and the reasonableness of the amount of damages determined.... [I]f the amount is excessive under the prudent uninsured standard, remittitur is proper to reduce the damages to an appropriate amount." Id. at 121.
 
 
 20
 In Ideal Mutual Ins. Co. v. Myers, 789 F.2d 1196 (5th Cir.1986), we considered a similar case. The litigation arose out of an airplane crash in which both the pilot Myers and the passenger Strother were killed. Ideal Mutual Insurance Company (Ideal) insured Myers, the pilot. Strother's survivors sued the Myers estate for wrongful death. Ideal engaged counsel to represent the Myers estate but reserved its right to deny coverage. Thereafter the Myers estate settled with Strother's survivors for $750,000.
 
 
 21
 Ideal filed a declaratory judgment action seeking a declaration that it did not afford coverage for the plane crash. The estate of Myers counterclaimed for the full amount of the settlement, together with punitive damages and attorneys' fees. The insurer, Ideal, moved for summary judgment because, inter alia, the settlement agreement constituted a breach of the "no action" clause of the policy. The defendants responded that Ideal failed to provide an unqualified defense, and the Myers estate was entitled to settle with the Strothers. The district court granted Ideal's motion. We reversed the district court summary judgment holding that the settlement violated the no action clause. Although we found it necessary to remand for determination of such issues as whether the qualified defense was timely tendered, we concluded that tendering a qualified defense satisfied the insurer's defense obligation.
 
 
 22
 The Texas Supreme Court has considered this problem on only one occasion since we decided the above cases. In Employers Casualty Co. v. Block, 744 S.W.2d 940 (Tex.1988), the insurer, Employers Casualty, was advised of a suit against its insured and declined to defend the suit. The insured, CSI, and the injured third party, the Blocks, then entered into an agreed settlement and consented to a judgment which the court entered. CSI then sued Employers Casualty and the Blocks intervened to collect the judgment.
 
 
 23
 The Texas Supreme Court concluded that while Employers Casualty could litigate the underlying facts on which its policy defense was predicated, Employers Casualty could not litigate the reasonableness of the settlement and thereby seek to avoid the full brunt of the consent judgment.
 
 
 24
 Thus, Block teaches that an insurer which flatly refuses to defend its insured cannot contest the reasonableness of a consent judgment entered on a settlement between its insured and an injured party. But Block did not consider whether an insurer suffers this same penalty if it tenders a defense to the insured with a reservation of rights to later deny coverage.
 
 
 25
 Olympia Wings also relies on the Texas Court of Appeals decision of Ranger Insurance Co. v. Rogers, 530 S.W.2d 162 (Tex.Civ.App.1975), which held that an insurer which tenders a defense with a reservation of rights is also precluded from contesting the reasonableness of a consent judgment. Although Block cites Ranger with approval, the question we face is whether we should read Block as embracing Ranger 's holding that an insurer which tenders a defense to its insured but reserves the right to later deny coverage is precluded from challenging the amount of a consent judgment. We are persuaded that we should read Block as adopting the Ranger rule only to the extent necessary to decide the issues presented in Block. The insurer in Block did not tender a defense to its insured, subject to the right to later deny coverage, and thus the Texas Supreme Court did not address this question. Therefore, we do not consider the Block court's citation of Ranger with approval as an indication that the court adopted the reasoning of the Ranger court beyond what was necessary to decide the issues presented in Block.
 
 
 26
 We conclude therefore that under Texas law an insurer which is obliged to defend its insured but flatly refuses to do so is considered in privity with the insured on all essential issues in the underlying action. Such an insurer cannot contest the reasonableness of a consent judgment agreed to between the insured and the injured party. We remain persuaded, however, that the Texas Supreme Court would reach the same result we did in Rhodes and hold that the insurer which tenders a full defense under a reservation of rights agreement is not bound by an unreasonable settlement that is reduced to a consent judgment.[2] In other words, such an insurer is not in privity with its insured for purpose of such a judgment. Accordingly, we vacate the judgment of the district court and remand for trial the question of whether Olympia Wings, in settling this action, acted as a prudent uninsured. If the court concludes that Olympia Wings had potential liability to the Marneys so that the settlement was proper as to liability, but the settlement amount is excessive, the district court may enter a remittitur to reduce the damages to an appropriate amount.
 
 III.
 
 27
 USAU argues next that the part of the district court's judgment finding that USAU afforded coverage for the operation of the Baron aircraft should be set aside because of erroneous evidentiary rulings. More particularly, USAU complains of several evidentiary rulings allowing Olympia Wings and the parties aligned with it, the Marneys and the pilot's executrix, to inform the jury through testimony and argument that USAU had released its claims against the Olympia Wings owners and mechanic. Those claims were predicated on USAU's contention that the Olympia Wings owners and mechanic had made fraudulent misrepresentations about the condition and operational status of the Merlin aircraft.
 
 
 28
 Before the trial started, the district court granted a motion in limine submitted by the pilot's executrix and ordered that no reference concerning "any offer of settlement, compromise or offer of payment" be made until it was brought to the court's attention so it could rule on such an offering.
 
 
 29
 The settlement evidence USAU complains of was first adduced by counsel for the Marneys when he attempted to rehabilitate Paul Marx, Olympia Wings' mechanic, on redirect examination. In cross examining Marx, USAU sought to impeach by showing an inconsistency between his deposition and his live testimony. Counsel for the Marneys persuaded the district court to permit them to elicit testimony from Marx that since his deposition USAU had dismissed its fraud claim against him and paid his attorney's fees to show that Marx was now a more neutral, unbiased witness. The court accepted the Marneys' argument and allowed the evidence for this limited purpose.
 
 
 30
 The Marneys adduced further evidence concerning USAU's settlement of its fraud claims during redirect examination of two other previous defendants to USAU's fraud claim, Olympia Wings owners Robert White and Thomas Hetherington. USAU did not object to this evidence nor request a limiting instruction.
 
 
 31
 USAU argues that the admission of this evidence that USAU had settled its fraud and conspiracy claims against Olympia Wings' owners and mechanic constitutes reversible error under Fed.R.Evid. 408.[3]
 
 
 32
 USAU acknowledges that Rule 408 does not require exclusion of settlement evidence "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness." Id. It contends, however, that before admitting the settlement evidence for a purpose other than proving "liability for or invalidity" of the settled claim, the district court failed to properly weigh the need for the evidence against its prejudice, and the potential that admitting it would discourage settlements and thus undermine one of the policies behind the rule. See Ramada Development Co. v. Rauch, 644 F.2d 1097, 1102 (5th Cir.1981); Reichenbach v. Smith, 528 F.2d 1072, 1075 (5th Cir.1976).
 
 
 33
 We are persuaded that the district court did not abuse its discretion in admitting evidence of settlement to show the change in Marx's position since his deposition was taken. Fed.R.Evid. 408 permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim. Belton v. Fibreboard, 724 F.2d 500, 505 (5th Cir.1984). The district court has broad discretion in determining whether to admit evidence of settlement for another purpose and we will not disturb that decision lightly. Reichenbach, 528 F.2d at 1074 (5th Cir.1976).
 
 
 34
 USAU concedes that it did not object to the settlement testimony elicited from White and Hetherington. It contends, however, that its objection is preserved because the Marneys' counsel disobeyed the court's ruling on the in limine motion and because it objected to settlement evidence during Marx's testimony. We disagree:
 
 
 35
 objection is required to preserve error when an opponent, or the court itself, violates a motion in limine that was granted. This rule is necessary to conserve judicial resources. Had plaintiff's counsel promptly objected to the violations of the motion in limine in this case, the trial court could have either avoided the violations or given an instruction to cure any harm suffered by the plaintiffs. The courts cannot adopt a rule that would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose.
 
 
 36
 Collins v. Wayne Corp., 621 F.2d 777, 785-86 (5th Cir.1980). "[I]t is too great a handicap to bind a trial judge to a ruling on a subtle evidentiary question ... outside a precise factual context." United States v. Griffin, 818 F.2d 97, 104 (1st Cir.1987), quoted in Freeman v. Package Machinery Co., 865 F.2d 1331, 1337 (1st Cir.1988). Because USAU did not lodge a contemporaneous objection to the questions propounded to White and Hetherington on settlement, USAU did not preserve its objection to this evidence on appeal.
 
 
 37
 USAU also complains of the district court's ruling allowing the Marneys to call the settlement to the attention of the jury during closing argument. The Marneys argued that because USAU dismissed its fraud and conspiracy claims against the Olympia Wings owners and mechanic, the jury should infer that Olympia Wings' owners and mechanic were truthful as to the Merlin's need of repair, and USAU knew they were truthful. As noted above, however, USAU did not object to the testimony of White and Hetherington when they recounted USAU's dismissal of its fraud claim against them. Once the evidence was admitted without objection, the district court did not abuse its discretion in permitting counsel to argue that the jury should accept the veracity of the Olympia Wings owners and mechanic and reject the contrary testimony concerning the Merlin's mechanical difficulties.
 
 
 38
 Finally, USAU argues that the district court erred in excluding evidence of the wrongful death consent judgment between Olympia Wings and the Marneys. USAU contends the evidence of the Marney settlement should have been admitted to corroborate the theory that the parties to the consent judgment conspired to manufacture facts to support coverage, and to impeach Olympia Wings' witnesses' testimony that they had not conspired with the Marneys to establish coverage under the USAU policy. The district court apparently concluded that because the consent judgment occurred six months after the alleged conspiracy and after USAU refused to defend, evidence of the settlement was of limited probative value in establishing the conspiracy. The district court has wide discretion in determining relevancy of evidence and we are persuaded that he did not abuse that discretion in excluding this evidence.
 
 IV.
 
 39
 In summary, we affirm that part of the district court's judgment determining that USAU covered the Baron aircraft. However, we vacate the judgment and remand this case to the district court to determine whether Olympia Wings acted as a prudent uninsured in agreeing to the settlement. If the district court determines that Olympia Wings had potential liability to the Marneys but finds that the settlement amount is excessive, the court may, at its option, enter a remittitur or order a trial on damages.
 
 
 40
 VACATED and REMANDED.
 
 
 
 [1]
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [2]
 This conclusion that USAU is not bound by the state court judgment disposes of appellees' argument that USAU is mounting a prohibited collateral attack on that judgment. USAU has no need to attack a judgment, collateral or otherwise, that does not bind it under rules of res judicata or collateral estoppel. See generally, G. Hodges, Collateral Attacks on Judgments, 41 Tex.L.Rev. 163 (1962)
 
 
 [3]
 Fed.R.Evid. 408 provides in part:
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.