**Grant DAVIDSON, Plaintiff and Appellant,**

v.

**Erwin M. PRINCE and Folkens Brothers Trucking, Defendants and Appellees.**

**No. 900461–CA.**

Court of Appeals of Utah.

June 18, 1991.

---

Ray H. Ivie, R. Phil Ivie, Jeffrey Peatross (argued), Provo.

H. James Clegg (argued), Robert C. Keller, Snow, Christensen & Martineau, Salt Lake City.

Before BILLINGS, Associate P.J., and ORME and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Appellant Grant Davidson was injured by a cow or a steer that had escaped from a wrecked truck driven by Erwin M. Prince, an employee of appellee Folkens Brothers Trucking. Subsequently, Davidson filed a negligence action against Prince and Folkens. A jury found appellees sixty percent negligent and appellant forty percent contributorily negligent. Based on this verdict, the judge entered a judgment in favor of appellant in the amount of $27,323.88 plus interest. Appellant moved for a new trial. The court denied this motion. Appellant appeals from the denial of his motion for a new trial. We affirm.

## FACTS

On May 28, 1986, appellee was driving a truck containing animals. Appellee negligently overturned the truck, releasing animals onto the highway and into the sur-

rounding area. Appellant was injured when he was attacked by a steer that had escaped from appellee's vehicle.

At trial, conflicting evidence was introduced regarding the proximity of appellant to the steer before the steer charged, ranging from forty feet to ten feet. Over appellant's objections, appellee's counsel introduced into evidence a statement from a letter written to the appellee wherein appellant estimated the distance as ten feet. Based on this evidence, appellee argued that appellant had cornered the steer and was therefore partly responsible for his injuries.

At trial, the jury awarded appellant total damages in the amount of $45,539.80. The jury, however, found appellant forty percent at fault and accordingly, appellant was ultimately awarded a judgment of only $27,323.88.

Appellant filed a motion for a new trial, contending the trial court had committed three errors of law. First, appellant argued the trial court erred in instructing the jury regarding the tax consequences of a personal injury judgment. Second, appellant contended the trial court erred in precluding his expert from testifying that appellee was negligent. Third, appellant claimed the trial court erred in admitting a statement made in a settlement letter.

The trial court denied appellant's motion for a new trial, concluding that even if error had occurred, it was harmless. Appellant appeals this decision, claiming the errors committed by the trial court were prejudicial.

## I.  JURY INSTRUCTION REGARDING THE TAX CONSEQUENCES OF A PERSONAL INJURY JUDGMENT

The trial court instructed the jury on the tax consequences of any award received by appellant as follows: "In determining the amount of damages you may not include in, or add to an otherwise just award, any sum for the purpose of punishing the defendants, or to serve as an example or warning for others. In addition you may not include in your award any sum for court costs or attorney fees. Neither may any sum of money be added to that amount for federal income taxes. *I charge you as a matter of law, that the amount awarded by your verdict is exempt from federal income taxation."* (emphasis added).

Appellant properly objected to the portion of this instruction stating that the verdict was exempt from federal taxation but his objection was overruled. On appeal, appellant contends the trial court erred by instructing the jury that any recovery received by appellant would not be subject to federal taxation. The propriety of the instructions given to the jury is a question of law and we therefore review the trial court's instructions for correctness. *Knapstad v. Smith's Management Corp.*, 774 P.2d 1, 2 (Utah App.1989).

■ Utah courts have yet to consider the propriety of instructing a jury on the tax consequences of a personal injury judgment. However, "[t]he majority view in this nation, by nearly a five-to-one ratio, is that income tax considerations should not be impressed upon a jury." *Dehn v. Prouty*, 321 N.W.2d 534, 538 (S.D.1982). The overwhelming majority of state courts which have addressed this issue have held that, "as a general rule, it is improper to instruct the jury on the tax consequence of a personal injury judgment, and have upheld the refusal of trial courts to do so." Annotation, *Propriety of Taking Income Tax Into Consideration in Fixing Damages in Personal Injury or Death Action*, 16 A.L.R. 4th 595 (1982).[1]

1. For cases condemning such an instruction in the context of a personal injury suit, *see Combs v. Chicago, St. Paul, Minn. & Omaha Ry. Co.*, 135 F.Supp. 750 (N.D.Iowa 1955); *Mitchell v. Emblade*, 80 Ariz. 398, 298 P.2d 1034 (1956); *W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526, 532 (1982); *Hildyard v. Western Fasteners, Inc.*, 33 Colo.App. 396, 522 P.2d 596 (1974); *Gorham v. Farmington Motor Inn, Inc.*,

159 Conn. 576, 271 A.2d 94, 96 (1970); *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976 (1966); *Hall v. Chicago & N.W. Ry. Co.*, 5 Ill.2d 135, 125 N.E.2d 77 (1955); *Spencer v. Martin K. Eby Const. Co.*, 186 Kan. 345, 350 P.2d 18, 24 (1960); *Louisville & Nashville R.R. Co. v. Mattingly*, 318 S.W.2d 844, 848 (Ky.1958); *Michaud v. Steckino*, 390 A.2d 524, 535 (Me.1978); *Anunti v. Payette*, 268 N.W.2d 52, 55 (Minn.1978);

Courts following the majority view have based their decisions on varying grounds. Some courts have held that jury instructions concerning the tax consequences of a personal injury or wrongful death award are improper because they interject a collateral and irrelevant matter. *See, e.g., Dehn,* 321 N.W.2d at 539 ("income tax liability is a matter foreign to the award of damages in that it is not a pertinent issue bearing on the award thereof"); *Mitchell v. Emblade,* 80 Ariz. 398, 298 P.2d 1034 (1956) (holding that taxability of award is collateral to the calculation of damages). According to these courts, if a jury were instructed regarding the tax consequences of a personal injury or wrongful death judgment, other cautionary instructions would also be required on other collateral matters which might affect the amount of damages awarded by a jury, such as the fact the injured party will have to pay attorney fees out of the judgment. *See Dehn,* 321 N.W.2d at 539. As noted by the *Emblade* court, if a jury is instructed on the tax consequences of an award,

> what objection can there be for plaintiff's counsel to state that the expense of trial is not provided for in the instruction concerning damages, that the cost of medical witnesses is not paid by the defendant, that the expense of taking depositions, as well as court reporting at the trial, must be borne by the individual litigants, that the fees of plaintiff's attorney are not recognized as an element, [and] that the defendant can deduct any award it pays from its income and excess profits tax return.

*Emblade,* 298 P.2d at 1037–38.[2]

Other courts aligning themselves with the majority have done so to prevent unnecessary complication of trials. *See, e.g.,*

*Amos v. Altenthal,* 645 S.W.2d 220 (Mo.App. 1983); *Steinauer v. Sarpy County,* 217 Neb. 830, 353 N.W.2d 715, 726 (1984); *Coleman v. New York Transit Auth.,* 37 N.Y.2d 137, 332 N.E.2d 850, 855, 371 N.Y.S.2d 663 (1975); *Andersen v. Teamsters Local 116 Bldg. Club,* 347 N.W.2d 309, 314 (N.D.1984); *Turner v. General Motors Corp.,* 584 S.W.2d 844 (Tex.1979); *Crum v. Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961); *Barnette v. Doyle,* 622 P.2d 1349, 1367 (Wyo.1981).

For cases holding similarly in the context of a wrongful death action, *see Hansen v. Johns–Manville Prod. Corp.,* 734 F.2d 1036, 1045, *reh'g denied,* 744 F.2d 94 (5th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985); *Vasina v. Grumman Corp.,* 644 F.2d 112, 118 (2d Cir.1981); *Johnson v. Husky Indus., Inc.,* 536 F.2d 645, 650 (6th Cir.1976); *Canavin v. Pacific S.W. Airlines,* 148 Cal.App.3d 512, 196 Cal.Rptr. 82, 100 (1983); *Richmond Gas. Corp. v. Reeves,* 158 Ind.App. 338, 302 N.E.2d 795 (1973); *Kirk v. Ford Motor Co.,* 147 Mich.App. 337, 383 N.W.2d 193, 198 (1985); *Scallon v. Hooper,* 293 S.E.2d 843, 845, *review denied,* 306 N.C. 744, 295 S.E.2d 480 (1982); *Terveer v. Baschnagel,* 3 Ohio App.3d 312, 445 N.E.2d 264 (1982); *Green v. Denney,* 87 Or.App. 298, 742 P.2d 639 (1987); *Rivera v. Philadelphia Theological Seminary,* 326 Pa.Super. 509, 474 A.2d 605, 617 (1984); *Stallcup v. Taylor,* 62 Tenn.App. 407, 463 S.W.2d 416 (1971).

For additional cases holding similarly in both contexts, see Annotation, *Propriety of Taking Income Tax Into Consideration in Fixing Damages in Personal Injury or Death Action,* 16 A.L.R.4th 595 (1982 & Supp.1990).

Nevertheless, in *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the United States Supreme Court held that in a wrongful death action brought under the Federal Employer's Liability Act (FELA), the trial court erred in excluding evidence offered by the defendant to show the effect of income taxes on the decedent's estimated future earnings and in refusing to instruct the jury that their award to the plaintiff would not be subject to income tax.

Despite the Supreme Court's holding, most state courts addressing the taxation instruction issue subsequent to the *Liepelt* decision have maintained their prior position that it is improper to instruct the jury regarding the tax consequences of a personal injury or wrongful death award under state law limiting *Liepelt* to FELA cases. *See, e.g., Canavin v. Pacific S.W. Airlines,* 148 Cal.App.3d 512, 196 Cal.Rptr. 82 (1983); *Barnette v. Doyle,* 622 P.2d 1349 (1981); *Dehn,* 321 N.W.2d at 538 (noting that *Liepelt* "dealt solely with federal law ... as applied to a wrongful death action and has been generally limited to the particular facts arising thereunder"); *Klawonn v. Mitchell,* 105 Ill.2d 450, 86 Ill.Dec. 478, 481, 475 N.E.2d 857, 860 (1985). ("Although *Liepelt* has established that in FELA actions, juries, upon request, must be instructed that any damages awarded are not subject to taxation, this case involves purely State law, and *Liepelt* is not directly controlling.").

**2.** Indeed, as noted by Justice Blackmun, "[i]t is also 'entirely possible' that the jury 'may' increase its damages award in the belief that the defendant is insured, or that the plaintiff will be obligated for substantial attorney's fees, or that the award is subject to state (as well as federal) income tax, or on the basis of any number of other extraneous factors." *Liepelt,* 444 U.S. at 503, 100 S.Ct. at 762 (Blackmun, J., dissenting).

*Scallon v. Hooper,* 58 N.C.App. 551, 293 S.E.2d 843, 845 ("consideration of the taxation issue ... would ordinarily involve abundant and intricate evidence and jury instructions on present and future tax and nontax liabilities") *review denied,* 306 N.C. 744, 295 S.E.2d 480 (1982); *Emblade,* 298 P.2d at 1038 (noting that interjecting this issue into the calculation of damages would unduly "complicate the trial by requiring an intricate discussion of tax and nontax liabilities"); *Combs v. Chicago St. Paul, Minneapolis & Omaha Ry. Co.,* 135 F.Supp. 750, 757 (N.D.Iowa 1955) (noting that interjecting this issue into the calculation of damages "would probably give rise to more problems than it would solve"); *Klawonn v. Mitchell,* 105 Ill.2d 450, 475 N.E.2d 857, 861 (1985) ("proof of pecuniary loss, not simple under the best of circumstances, should not be rendered more complex by injecting the question of income tax or other extraneous factors").[3]

Courts adopting the majority position also note that there is no evidence that juries increase damage awards because of a belief that such awards are taxable. *See, e.g., Dehn,* 321 N.W.2d at 538 (noting that there is "no evidence ... or empirical data demonstrating that ... juries in general regularly increase damage awards because of a mistaken belief that the state and federal governments share in the award through income taxes"); *Klawonn,* 475 N.E.2d at 860 (quoting *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 503, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) (Blackmun, J., dissenting)) (" '[t]here certainly is no evidence in this record to indicate that the jury is any more likely to act upon an erroneous assumption about any other collateral matter' ").

A fourth reason given by courts which have adopted the majority position is that the taxability of the award is an issue which concerns only the recipient of the award and the Internal Revenue Service. *See, e.g., Eriksen v. Boyer,* 225 N.W.2d 66, 74 (N.D.1974) (quoting *Hall v. Chicago & N.W. Ry. Co.,* 5 Ill.2d 135, 125 N.E.2d 77, 86 (1955)) (" 'whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government' "). As noted by the *Eriksen* court, " 'if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.' " *Id.*

Finally, some courts have rejected jury consideration of income tax consequences because such instructions are too conjectural and speculative. *See, e.g., Canavin v. Pacific S.W. Airlines,* 148 Cal.App.3d 512, 541, 196 Cal.Rptr. 82, 102 (1983) ("Income tax instructions are conjectural and open the door to intense speculation."); *Scallon,* 293 S.E.2d at 845 ("The reason courts adopt the majority view of refusing to take income tax consequences into consideration in awarding damages for wrongful death is that the amount of a recipient's future income tax liability is too conjectural or speculative a factor.").

We are persuaded by the aforestated arguments supporting the exclusion of an instruction in a personal injury or wrongful death action informing the jury that the judgment will not be subject to taxation. We, therefore, adopt the majority view that it is improper to instruct the jury as to the tax consequences of a personal injury or wrongful death award. We do so, however, cognizant of the fact that most courts addressing this issue have done so in the context of deciding whether it was error for the trial court to refuse to give an income tax instruction. Most trial judges have exercised their discretion to exclude such instructions.

---

3. In a wrongful death action, the finder of fact must consider the probable future income of the deceased in order to accurately calculate the plaintiff's damages. In contrast, calculation of damages in a personal injury action usually will not involve the future income of the plaintiff to the same extent. Introducing the issue of the tax consequences of a damage award, therefore, likely will complicate matters more in a wrongful death action than in a personal injury suit. The majority of jurisdictions addressing this issue, however, have applied one uniform standard to both types of cases, refusing to create two separate rules. We believe this is the sound approach.

In the instant case, the trial court gave the requested tax instruction. Thus, we are faced with a different issue; did the trial court commit reversible error by instructing the jury as to the tax consequences of the plaintiff's award? Few courts have directly addressed this issue. The courts that have addressed the prejudice resulting from an income tax instruction have done so in the context of wrongful death actions and have held that "it is *reversible error* for the trial court to instruct the jury that damages awarded ... are exempt from federal and state income taxes." *Scallon,* 293 S.E.2d at 845 (emphasis added); *see also Klawonn,* 475 N.E.2d at 857 (holding that instructing the jury that wrongful death award was not subject to taxation was reversible error).

■ Under Utah law, an improper jury instruction is grounds for "reversible error 'if it tends to mislead the jury to the prejudice of the complaining party.'" *Knapstad v. Smith's Management Corp.,* 774 P.2d 1, 3 (Utah App.1989) (citations omitted). Where a jury is instructed on the tax consequences of a damage award, the effect of such instructions on the jury's ultimate damage award is extremely difficult, if not impossible, to determine. This in some ways supports a per se reversible error prophylactic rule. However, in the case before us, although the court did improperly instruct the jury as to the tax consequences of the judgment, this error was mitigated by the context in which the information was presented. The instruction at issue not only informed the jury about the tax consequences of the judgment, but also admonished the jury not to consider other collateral matters such as punishment or attorney fees. In fact, the first part of the instruction referring to taxes merely informed the jurors not to add any amount for the payment of taxes.[4] In context, we cannot say that the objectionable portion of the instruction was likely to have affected the amount of damages

awarded. However, we caution that an instruction as to the tax consequences of a judgment should not be given by trial judges as our conclusion concerning the prejudicial impact of such an instruction could be different in other factual contexts.

## II. PRECLUSION OF EXPERT TESTIMONY

■ During the presentation of appellant's case in chief, Mr. Newell Knight, an accident reconstruction expert, was called to testify regarding appellee's negligence. Counsel for appellant asked Mr. Knight if he had an opinion regarding whether appellee was negligent. Mr. Knight responded affirmatively. When Mr. Knight was asked to express his opinion, counsel for appellee objected on the ground that the question pertained to an ultimate issue to be decided by the jury. The trial court sustained appellee's objection. On appeal, appellant argues the trial court committed prejudicial error by excluding Mr. Knight's testimony because such opinion testimony is expressly allowed under Utah Rule of Evidence 704.

In reviewing the admissibility of evidence at trial, we give deference to the trial court's advantageous position, and do not overturn the result unless it is clear the trial court erred. *See Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 923 (Utah 1990); *see also State v. Kinsey,* 797 P.2d 424, 427 (Utah App.) ("It is generally held that the trial court has discretion to determine the suitability of expert testimony in a case."), *cert. denied,* 800 P.2d 1105 (Utah 1990).

Traditionally, an expert was not allowed to offer an opinion on an ultimate issue to be decided by the jury. *See, e.g., Washington v. United States,* 390 F.2d 444 (D.C. Cir.1967). Expert testimony regarding ultimate issues, however, is now admissible

---

4. We realistically note that juries often speculate as to collateral matters such as whether the plaintiff will have to pay attorney fees, costs and taxes from the judgment, as well as whether insurance will cover some portion of the dam-

ages. It may be useful to explicitly caution the jury not to speculate on any of these collateral matters, but only to decide the question of damages with reference to the evidence before them and the court's instructions.

under Utah Rule of Evidence 704.[5] This rule reads: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Utah R.Evid. 704.[6]

The trial court's exclusion of this testimony, however, can be affirmed on the ground that it was a legal conclusion. Although Rule 704 abolishes the per se rule against testimony regarding ultimate issues of fact, it does not allow all opinions. "The Advisory Committee notes [to Rule 704] make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Thus, an expert generally cannot give an opinion as to whether an individual was "negligent" because such an opinion would require a legal conclusion. *See, e.g., Shahid v. City of Detroit*, 889 F.2d 1543 (6th Cir.1989) (holding that expert testimony was not admissible on ultimate legal conclusion of whether correctional officers were negligent in failing to provide necessary medical treatment to inmate); *see also Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir.1988) (holding that allowing legal expert to testify as to whether there had been a "search" in plaintiff's residence constituted reversible error; summarizing cases in which the second, fourth, fifth and sixth circuits held that expert witnesses may not give legal conclusions); *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409 (8th Cir.1987) ("Opinion testimony is not helpful to the factfinder if it is couched as a legal conclusion."); *Smith v. Atlantic Richfield Co.*, 814 F.2d 1481, 1485 (10th Cir.1987) (upholding trial court's exclusion

of expert's opinion as to whether defendant's actions were "prudent mine practices" on the grounds that the question called for a legal conclusion).

There is no bright line between permissible questions under Rule 704 and those that call for overbroad legal responses. Here, however, the intended response when placed in context was an inadmissible one. Mr. Knight was allowed to give his opinion as to, *inter alia,* the reason appellee's truck overturned while going around a curve, that the truck was traveling too fast for the curve, what the speed limit was at the curve, whether a person hauling livestock should be concerned with his load and what the concerns should be, and whether a person hauling livestock could foresee the possibility of injury if the truck overturned. Indeed, the only evidence the trial court excluded was Knight's conclusion regarding whether appellee was negligent. Additionally, Knight's testimony was not technical or difficult to understand, but was expressed in lay terms. The trial judge did not err in excluding Mr. Knight's opinion testimony that appellee was negligent. The excluded testimony was an answer to a specific question which would appear on the verdict form, a question which must be answered based upon the judge's definition of a legal term "negligence." Questions which allow a witness to simply tell the jury what result to reach are not permitted.

Given that Knight's testimony was easily understandable and that Knight was allowed to testify as to everything except his final conclusion that appellee was negligent, the testimony was properly excluded as the jury was capable of drawing its own

---

5. This rule follows Federal Rule of Evidence 704 verbatim. The Utah Supreme Court has stated that "since the advisory committee generally sought to achieve uniformity between Utah's rules and the federal rules, [the Utah Supreme Court] looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." *State v. Gray*, 717 P.2d 1313, 1317 (Utah 1986). Accordingly, this court may look to federal law interpreting Federal Rule of Evidence 704 to aid in the interpretation of Utah Rule of Evidence 704.

6. *See also Gaw v. State*, 798 P.2d 1130 (Utah App.1990) (noting that Utah Rule of Evidence 704 allows an expert to express opinion concerning ultimate issue in the case); 11 J. Moore & H. Bendix, Moore's Federal Practice § 704.10, at VII–64 (1989) ("Under rule 704, testimony of both lay and expert witnesses in the form of an opinion or inference otherwise admissible is not objectionable because it 'embraces an ultimate issue to be decided by the trier of fact.'").

conclusions from the evidence presented and after instruction from the court.[7]

## III. ADMISSION OF STATEMENT IN "SETTLEMENT" LETTER

■ Finally, appellant contends the trial court erred in allowing into evidence statements he made in a letter to appellee. Appellee's theory at trial was that appellant was negligent in cornering the steer which had escaped from appellee's truck. In support of this theory, appellee emphasized the distance between appellant and the animal at the time the animal charged. As noted earlier, appellant in deposition testimony estimated the distance to be approximately forty feet. Additional evidence was presented at trial that the distance may have been approximately twenty-two feet. At trial, appellee's counsel introduced a statement from a letter written to appellee wherein appellant estimated the distance at ten feet, a distance which tended to support appellee's theory. Appellant claims the trial court erred in admitting this statement because it was made as part of settlement negotiations.

The admissibility of settlement negotiations is governed by Utah Rule of Evidence 408 which states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Utah R.Evid. 408. This rule follows verbatim Federal Rule of Evidence 408 which was used as a model in drafting the Utah Rules. *See* Fed.R.Evid. 408. Accordingly, this court looks to federal law interpreting Federal Rule of Evidence 408 to define the contours of Utah Rule of Evidence 408. *See Gray*, 717 P.2d at 1317; *see also* note 5, *supra*.

"In order for the exclusionary rule to attach, the party seeking to have evidence of offers to compromise or statements made in the course thereof excluded must show that the discussions in question were made in 'compromise negotiations.'" 10 J. Moore & H. Bendix, Moore's Federal Practice § 408.04 (1988 & Supp.1990).

The letter in question, from appellant and his wife to appellee, begins by reviewing the factual circumstances of the accident[8] and it is in this factual recitation that

---

**7.** Furthermore, Rule 704 must be read in conjunction with the other rules of evidence. Thus, while [Rule 704] permits expert opinion testimony on an ultimate issue, Rule 704 does not mean that all opinions are admissible into evidence. Rules 701 and 702 require, respectively, that the opinions of lay and expert witnesses assist the trier of fact. And Rule 403 provides for the exclusion of evidence which wastes time. Thus, if a witness's opinion will do little more than tell the jury what result to reach, it will be inadmissible. 10 J. Moore & H. Bendix, Moore's Federal Practice § 704.02, at VII–63 (1989).

**8.** This portion of the letter reads:
It appears you have been poorly informed as to Mr. Grant Davidson's injury claim.
Please allow us to clarify: Mr. Davidson while performing his job for the D & RGW Railroad, saw the injured cow sitting on the railroad. He stopped and got out some 10 feet from the animal. He made no move towards the injured cow but while standing still was charged. He fled the cow, but it caught him, goring him in the back and sending him air born for approximately 20 feet where he landed on the rail on his knee.
The attack continued with the cow attempting to trample Mr. Davidson to death, as he lay stunned with a concussion on the ground he pushed the animal off and escaped to the safety of a rail car.
The cow continued to charge repeatedly and finally moved off. It then charged many others before it was killed.
Mr. Davidson did not pursue, chase or attempt to move the cow. As it (the cow) was injured in the accident, it became abnormally dangerous.

appellant admits "he stopped and got out some 10 feet from the animal." Following this recitation of facts, the letter continues by stating, "[w]e don't intend to let you or that trucking company off, with a letter telling us that your [sic] not responsible." In conclusion, appellant's letter states, "[y]ou may speak with us directly or we can send it to lawyers and to court, you decide."

 We believe the trial judge was correct in admitting the statement from the letter sent by appellant to appellee because the letter was not an offer to compromise appellant's claim, nor was it written as part of settlement negotiations. To the contrary, this letter is merely an attempt to inform appellee as to the facts of the incident. Furthermore, appellant in the letter demands payment in full of appellant's claim and its whole tenor is that appellant will not compromise one bit.[9]

In sum, we conclude that the trial judge did not err in excluding appellant's expert testimony that appellee was negligent. Such testimony was a legal conclusion and did not assist the trier of fact and, therefore, was properly excluded. Additionally, the trial judge did not err in admitting a statement in which appellant estimated that the distance between himself and the steer prior to the accident was ten feet. The statement was not made in the course of settlement negotiations. Finally, although we conclude the trial judge erred by instructing the jury regarding the tax consequences of the plaintiff's award, we find the error harmless. · Accordingly, we affirm.

ORME, J., concurs.

RUSSON, J., concurs in Parts II and III and in the result only in Part I.

---

> We have been advised by legal counsel that the contents of a truck, when they spill and are dangerous (as this case) are the responsibility of the insurer when those dangerous contents injure innocent people.
>
> Mr. Davidson has a permanent knee problem, and must wear a brace while doing any work. He's had 16 years with this job, which is now jeopardized by this injury. He has lost wages, has great suffering and now is going to be disabled the rest of his life.

9. Even if appellant's letter was construed to be a statement made in settlement negotiations, courts construing Federal Rule of Evidence 408 and similar state rules have held that evidence of statements made in settlement negotiations can and should be admitted for purposes of impeachment. For example, in *United States Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949 (5th Cir.1990), the court held that the trial court had properly acted within its discretion under Rule 408 when it admitted evidence of a settlement that was offered to impeach the plaintiff's earlier deposition testimony. In so holding, the court stated that Federal Rule of Evidence 408 "permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim." *Id.* at 956 (citing *Belton v. Fibreboard*, 724 F.2d 500, 505 (5th Cir.1984)). Similarly, in *County of Hennepin v. AFG Indus., Inc.*, 726 F.2d 149 (8th Cir.1984), the court allowed evidence of a settlement to impeach. The court stated that although Rule 408 excludes evidence of a settlement to prove liability, it " 'does not require exclusion when the evidence is offered for another purpose, such as proving the bias or prejudice of a witness ...,' " adding that "[t]he Rule codifies a trend in case law that permits evidence of a settlement to impeach." *Id.* at 152–53 (citing *Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir.1976)). Furthermore, in *Slusher v. Ospital*, 777 P.2d 437 (Utah 1989), the Utah Supreme Court stated, albeit in dicta, that under Utah Rule of Evidence 408, evidence of compromise is admissible for impeachment purposes. In *Slusher*, the court was considering the effect of two statutes which were superseded by the Utah Rules of Evidence, Utah Code Ann. §§ 78–27–29 and –30 (1977). The court stated that "[t]aken together, the two statutes resulted in a rule not unlike Utah Rule of Evidence 408, now in effect. In other words, they precluded introduction of the settlement for the purpose of establishing liability *but not for the purposes relating to credibility*." *Id.* at 443 (emphasis added); *see also id.* n. 12 (in which the court stated that if Rule 408 applied to the trial in *Slusher*, "it even more clearly supports the conclusion we reach [that evidence of compromise should be allowed for impeachment purposes].").

Thus, even if appellant's letter to appellee were to be construed to have been made as part of settlement discussions, it could be admitted to impeach appellant's prior testimony regarding the distance between himself and the steer prior to the accident.