IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0647
════════════
 
Evanston Insurance Company, 

Petitioner,
 
v.
 
ATOFINA Petrochemicals, 
Inc.
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 13, 
2005
 
 
            
Justice Green delivered the opinion of the Court, in 
which Chief Justice Jefferson, Justice 
O’Neill, Justice Wainwright, Justice Brister, Justice Medina, and Justice Willett joined, and in which Justice Hecht and Justice Johnson joined as to Parts I, 
II.A–II.D, and II.F.
 
            
Justice Hecht filed an 
opinion concurring in part and dissenting in part, in which Justice Johnson joined. 
 
 
 
            
Rehearing is granted. We withdraw the opinion and judgment previously issued in this case and substitute the 
following opinion.
            
In this case, we examine the interplay between a contractual indemnity 
provision and a service contract’s requirement to name an additional insured. 
More particularly, we must decide whether a commercial umbrella insurance policy 
that was purchased to secure the insured’s indemnity obligation in a service 
contract with a third party also provides direct liability coverage for the 
third party. In addition, we must decide whether the insurer is bound to pay the 
amount of an underlying settlement between the additional insured and a 
plaintiff. Finally, we must determine whether article 21.55 of the Texas 
Insurance Code, the “Prompt Payment of Claims” statute, authorized the 
imposition of penalties and attorney’s fees for the insurer’s failure to pay the 
claim timely. We conclude that the umbrella policy provides coverage for 
liabilities arising from the additional insured’s sole negligence, that the 
settlement agreement binds the insurer to the amount recited therein, and that 
the additional insured is not entitled to penalties for untimely payment of 
claims. We affirm the judgment of the court of appeals to the extent that it 
resolves the coverage dispute in favor of the additional insured, and to the 
extent that it binds the insurer to the amount recited in the settlement 
agreement, but we reverse the court of appeals’ judgment regarding damages and 
attorney’s fees under article 21.55 and render judgment that the additional 
insured is not entitled to recovery of such damages and fees.
I
            
ATOFINA Petrochemicals, Inc.[1] contracted with 
Triple S Industrial Corporation to perform maintenance and construction work at 
ATOFINA’s Port Arthur refinery. The service contract 
contained an indemnity provision and a requirement that Triple S carry certain 
minimum levels of liability insurance coverage. Triple S agreed to indemnify 
ATOFINA from all personal injuries and property losses sustained during the 
performance of the contract, “except to the extent that any such loss is 
attributable to the concurrent or sole negligence, misconduct, or strict 
liability of [ATOFINA].” Triple S also agreed to carry at least $500,000 of 
primary comprehensive general liability (CGL) insurance, “[i]ncluding coverage for 
contractual liability insuring the indemnity agreement,” and an excess (or 
“umbrella”) liability policy “following form for [the CGL policy]” of at least 
$500,000. Finally, the contract required Triple S to furnish certificates of 
insurance to ATOFINA evidencing the required insurance coverages and showing ATOFINA as an additional insured on 
the policies. Triple S complied with its contract obligations by purchasing a $1 
million CGL policy from Admiral Insurance Company and a $9 million commercial 
umbrella policy from Evanston Insurance Company, and by furnishing the required 
certificates of insurance.
            
Matthew Todd Jones, a Triple S employee working at the ATOFINA facility 
pursuant to his employer’s contract with ATOFINA, drowned after he fell through 
the corroded roof of a storage tank filled with fuel oil. Jones’s survivors sued 
Triple S and ATOFINA for wrongful death. Admiral tendered its $1 million policy 
limits. ATOFINA then demanded coverage from Evanston as an additional insured under the 
umbrella policy. Evanston denied the claim, and 
ATOFINA brought Evanston into the case as a third-party 
defendant for a declaration of coverage. ATOFINA then severed its suit against 
Evanston from 
the remainder of the Jones litigation. Both ATOFINA and Evanston moved for partial 
summary judgment in the severed action. While the motions were pending, the 
Jones case was settled for $6.75 million. ATOFINA seeks to recover from 
Evanston the 
$5.75 million not covered by Admiral.
            
The trial court granted summary judgment in favor of Evanston. The court of 
appeals reversed the judgment, holding that the Evanston policy covered ATOFINA, and remanded 
the case to the trial court for determination of statutory penalties and 
attorney’s fees.[2]
II
            
Evanston 
argues it should not have to indemnify ATOFINA for its contribution to the Jones 
settlement for several reasons. First, it says ATOFINA agreed in its service 
contract with Triple S that it would not seek indemnification for losses 
resulting from its own negligence. Evanston says the language of its policy 
similarly excludes coverage for such losses caused by ATOFINA’s negligence. The umbrella policy was a “following 
form” policy as required by the service contract, meaning that its coverage was 
no broader than the underlying policy, which identified ATOFINA as an additional 
insured “only with respect to liability arising out of [Triple S’s] ongoing 
operations performed for [ATOFINA], but in no event for [ATOFINA’s] sole negligence.” Second, Evanston says this court’s 
decision in Fireman’s Fund Insurance Co. v. Commercial Standard Insurance 
Co.[3] precludes 
ATOFINA from obtaining a judgment for insurance proceeds based on losses arising 
from its own negligence.[4] Finally, Evanston says the Jones settlement amount was 
unreasonable and is thus unenforceable. We address these arguments in turn.
A
            
In its service contract with Triple S, ATOFINA disclaimed any right of 
indemnity for losses “attributable to [its] concurrent or sole negligence.” 
Under the terms of the service contract, ATOFINA is not entitled to be 
indemnified by Triple S if the Jones loss was occasioned in any way by ATOFINA’s negligence. But ATOFINA does not seek indemnity 
from Triple S; it claims instead that it is entitled to indemnification from 
Evanston by virtue of its status as an additional 
insured on the umbrella policy Evanston issued to Triple S.[5] Instead of looking, as the court of 
appeals did, to the indemnity agreement in the service contract to determine the 
scope of any coverage, we base our decision on the terms of the umbrella 
insurance policy itself.
            
In support of its insured status, ATOFINA points to part III of the 
Evanston policy, 
which defines who is an insured. Section III.B.6 states that an insured 
includes:
 
A person 
or organization for whom you have agreed to provide 
insurance as is afforded by this policy; but that person or organization is an 
insured only with respect to operations performed by you or on your behalf, or 
facilities owned or used by you.
 
 
ATOFINA claims 
it is fully covered as an insured by virtue of this paragraph because it is a 
“person or organization for whom [Triple S has] agreed to provide insurance,” 
because the Evanston policy is the kind of insurance that 
was intended to secure that obligation, and because the loss “respect[ed] . . . operations performed by [Triple S].”
            
But Evanston counters that ATOFINA fails to qualify 
as an additional insured under section III.B.6 because the language does not 
cover an additional insured for its own negligence. Although no fact finding has 
been made regarding who was responsible for Jones’s death, Evanston contends that 
because Jones’s death was caused solely by ATOFINA’s 
negligence, the death did not “respect . . . operations performed by [Triple 
S].”
            
The courts of appeals have confronted these additional insured provisions 
on several occasions, producing divergent results. Like Triple S’s policy, the 
insured contractor’s policy in Granite Construction Co. v. Bituminous 
Insurance Cos.[6] provided for 
additional insurance “only with respect to liability arising out of operations 
performed for such insured.”[7] Granite adopted a fault-based 
interpretation of “arising out of operations,” recognizing coverage only if an 
insured’s wrongful act during the operation caused the injury.[8] The Granite court held that the 
claim did not “aris[e] out of operations performed by” 
the insured because only the additional insured company was responsible for the 
injury.[9]
            
The First and Third Courts of Appeals reached different results under a 
more liberal causation theory of additional insured provisions. In those cases, 
the additional insured provisions created coverage only “with respect to 
liability arising out of” the named insured’s operations, and in both cases the 
claimants alleged that the additional insured companies acted negligently.[10] In Admiral Insurance Co. v. Trident 
NGL, Inc., the court concluded:
 
[B]ecause the accident in this case occurred to a[n] 
[insured’s] employee while the employee was on the premises for the purpose of 
performing preventive maintenance on the compressor that exploded, the alleged 
liability for the employee’s injuries “arose out of [the insured’s] operations,” 
and, therefore, was covered by the “additional insured” provision.[11]
 
 
The court in 
McCarthy Brothers Co. v. Continental Lloyds Insurance Co. applied a 
similar theory to find that a worker’s slip-and-fall injury while retrieving 
tools at the job site “arose out of” the insured subcontractor’s operation, even 
for purposes of a negligence claim against the additional insured premises 
owner.[12]
            
We prefer the reasoning of Admiral and McCarthy to 
Granite for two reasons. First, Granite relied on an underlying 
service contract that made the additional insured company responsible for the 
specific injury-causing act.[13] However, our decisions since 
Granite make clear that “the liability insurer is to determine its duty 
to defend solely from terms of the policy and the pleadings of the third-party 
claimant,” and, accordingly, that “evidence outside the four corners of these 
two documents is generally prohibited.”[14] Even if we examine the service contract 
here, we can easily distinguish this case from Granite. The service 
contract between Triple S and ATOFINA does not assign responsibility for 
maintaining the storage tank that caused Jones’s injury. Rather, the contract 
gives Triple S the exclusive “power and authority to select the means, method 
and manner of performing” the operation, and provides that Triple S “shall have 
control of and be responsible for the WORK SITE.” Far from shifting any 
responsibility to ATOFINA, the specific terms of the service contract make 
Triple S responsible for all operations. 
            
Second, regardless of the underlying service agreement’s terms, we do not 
follow Granite because the fault-based interpretation of this kind of 
additional insured endorsement no longer prevails.[15] Instead, we interpret “with respect to 
operations” under a broader theory of causation. Generally, an event “respects” 
operations if there exists “a causal connection or relation” between the event 
and the operations; we do not require proximate cause or legal causation.[16] In cases in which the premises condition 
caused a personal injury, the injury respects an operation if the operation 
brings the person to the premises for purposes of that operation.[17] The particular attribution of fault 
between insured and additional insured does not change the outcome.[18]
            
Our interpretation results, in part, from the ordinary and natural 
meaning of the phrase “with respect to.”[19] It also results from our recognition 
that, had the parties intended to insure ATOFINA for 
vicarious liability only, “language clearly embodying that intention was 
available.”[20] The majority of other courts facing the 
issue have reached a similar result.[21]
            
Under section III.B.6 of the Evanston policy, the Jones injury 
“respect[ed] [] operations 
performed by [Triple S]” because Triple S employed Jones, who was performing the 
operation at the time and place of the injury. Although the pleadings in the 
underlying suit do not indicate whether or not Jones was performing a Triple S 
operation at the precise time of the accident, Jones was present at ATOFINA’s facility for purposes of Triple S’s operations 
when the accident occurred. As a result, even if ATOFINA’s negligence alone caused Jones’s injury, section 
III.B.6 of the Evanston policy provides direct insurance 
coverage to ATOFINA.[22]
B
            
Evanston and ATOFINA both look to section 
III.B.5 of the policy to support their respective positions regarding the scope 
of coverage under the Evanston policy. ATOFINA claims that section 
III.B.5 provides an independent basis for coverage, while Evanston argues that 
section III.B.5 does not apply. Section III.B.5 says an insured can be:
 
Any other person or organization who is insured under a policy of 
“underlying insurance.” The coverage afforded such insureds under this policy will be no broader than the 
“underlying insurance” except for this policy’s Limit of Insurance.
 
 
This is a 
catch-all section that appears intended to bring within the policy coverage any 
“other” entities that are insured by the underlying policy but are not included 
within the preceding who-is-an-insured sections of paragraph III.B of the 
policy. Because ATOFINA cannot be an insured under sections III.B.1 through 
III.B.4, section III.B.5 applies in this case as long as ATOFINA was insured 
under the Admiral policy.
            
Evanston 
argues section III.B.5 establishes the policy’s identity as a “following form” 
policy of the kind that was specified by the service contract, and that the 
nature of the policy precludes coverage.[23] Under section III.B.5, coverage cannot 
extend beyond what the underlying Admiral policy provides. Looking to the 
underlying policy, which specifically excludes coverage for ATOFINA’s sole negligence, we conclude coverage under 
section III.B.5 is limited and excludes losses caused by ATOFINA’s sole negligence.[24] On the record before us, we are unable 
to determine as a matter of law whether the Jones accident was the product of 
ATOFINA’s sole negligence. The Jones family originally 
sued both ATOFINA and Triple S, alleging both parties were negligent. There were 
allegations in ATOFINA’s pleadings that Jones himself 
was contributorily negligent. Triple S was eventually 
nonsuited, and the Jones’s claim against ATOFINA was 
settled with no admission of liability by either party. Thus, without a 
determination of liability, it is impossible to say whether ATOFINA’s responsibility for the accident, if any, excluded 
it from coverage under section III.B.5 of the Evanston policy.
C
            
Evanston and ATOFINA disagree about the 
scope of coverage available in the event that ATOFINA qualifies as an insured 
under both sections III.B.5 and III.B.6 of the Evanston policy. ATOFINA favors a broader scope 
of coverage under section III.B.6, relying on the fact that it, unlike section 
III.B.5, does not expressly limit the coverage afforded to an insured to that 
provided by an underlying policy.
            
When interpreting an insurance contract, we “must adopt the construction 
of an exclusionary clause urged by the insured as long as that construction is 
not unreasonable, even if the construction urged by the insurer appears to be 
more reasonable or a more accurate reflection of the parties’ intent.”[25] “Exceptions or limitations on liability 
are strictly construed against the insurer and in favor of the insured,” and 
“[a]n intent to exclude coverage must be expressed in clear and unambiguous 
language.”[26] Therefore, we must adopt ATOFINA’s broad interpretation of coverage unless there is 
“clear and unambiguous” policy language requiring the limitations on coverage in 
section III.B.5 to also restrict the coverage available when section III.B.6 or 
any other who-is-an-insured clause independently provides coverage.
            
Reading paragraph III.B as a whole, we conclude that each 
who-is-an-insured clause operates to grant coverage independently. Nothing in 
paragraph III.B suggests that the limitations of one section granting coverage 
should be read into another separate section granting coverage.[27] In fact, apart from section III.B.5, 
other paragraph III.B sections contain disparate limiting language in their 
definitions of “insured,” suggesting that each grant of coverage in paragraph 
III.B can be read independently as a self-contained grant of coverage. For 
example, section III.B.1 covers employees as “an insured” but excludes coverage 
for certain bodily injury. For the same reason that we would not read the 
section III.B.1 bodily injury limitation into the broad coverage of section 
III.B.6, we refuse to read section III.B.5’s exclusion of coverage beyond the 
scope of the Admiral policy into section III.B.6. Because ATOFINA is entitled to 
coverage under more than one who-is-an-insured clause in paragraph III.B, it is 
not unreasonable to conclude that the policy should be read to provide the 
broader measure of coverage available under the applicable clauses. We therefore 
hold that the Evanston policy provides the broader scope of 
coverage that does not exclude liabilities arising out of ATOFINA’s sole negligence.
D
            
Evanston 
next contends that this Court’s 1972 decision in Fireman’s Fund v. Commercial 
Standard Ins. Co.[28] is dispositive 
because, applying that holding, ATOFINA cannot recover insurance proceeds based 
on losses arising from its own negligence. In Fireman’s Fund, we 
addressed the relationship between indemnity agreements and the requirement of 
liability insurance in service contracts.[29] In that case, General Motors Corporation 
contracted with Sam P. Wallace Co., Inc. to perform work on its Arlington assembly 
plant.[30] In the contract, Wallace agreed to 
indemnify GM for any losses arising out of its work and to obtain liability 
insurance to satisfy that obligation.[31] While performing under the contract, two 
of Wallace’s employees were injured, and they sued GM for negligence.[32] After the case settled, a declaratory 
judgment action was filed by the involved insurance carriers to resolve a 
dispute over whether Wallace was required by its contract to indemnify GM for 
GM’s negligence.[33] We followed the general rule in holding 
that “a contract of indemnity will not afford protection to the indemnitee against the consequences of his 
own negligence unless the contract clearly expresses such an obligation 
in unequivocal terms.”[34] Wallace’s indemnity agreement with GM 
failed to do that and thus we concluded that Wallace’s insurance carrier was not 
required to indemnify GM.[35] In doing so, we noted that “all of the 
relevant provisions of the contract should be considered when arriving at its 
intent and meaning.”[36] In its contract with GM, several 
provisions evinced Wallace’s intent to indemnify GM only with respect to losses 
occasioned by its own negligence, not GM’s negligence.[37] For example, in one provision, Wallace 
assumed liability “for any injuries or damages occasioned by his agents or 
employees on the premises of the Owner.”[38] In another, under a section entitled 
“Contractor’s Responsibility,” Wallace specifically excluded from its 
responsibility the “negligence of [the] Owner [GM].”[39]
            
In Fireman’s Fund, Wallace’s obligation to purchase insurance was 
to secure only its agreement to indemnify GM for Wallace’s own negligence.[40] We held that GM was not entitled to 
indemnification because the contract did not specify that the indemnity 
agreement extended to GM’s negligence.[41] However, it was never contended in 
Fireman’s Fund that GM was an additional insured under Wallace’s 
liability policy and was therefore entitled to coverage on that basis, a fact 
that distinguishes Fireman’s Fund from this case. This case is similar 
to Fireman’s Fund only in that Triple S was required to purchase 
liability insurance to secure its indemnity agreement. But Triple S was also 
required to add ATOFINA as an insured on its policies, which was not a 
requirement of the contract in Fireman’s Fund.
            
This case is more analogous to our 1992 decision in Getty Oil Co. v. 
Insurance Co. of North America.[42] In that case, Getty entered into a 
contract to purchase chemicals from NL Industries.[43] The contract included an indemnity 
provision and a broad insurance requirement which provided that “[a]ll insurance coverage carried by [NL] . . . shall extend to 
and protect” Getty “whether or not required [by other provisions of the 
contract].”[44] After an accident involving NL’s product 
killed one of Getty’s contractors, and a jury found that Getty was 100 percent 
responsible, NL’s insurer refused coverage for Getty 
because the Texas Oilfield Anti-Indemnity Statute[45] prohibited indemnification for one’s own 
negligence.[46] But we held that the insurance 
requirement of the contract was separate and independent from the indemnity 
provision and, consequently, the prohibition of the Anti-Indemnity Statute did 
not apply.[47]
            
Although the service contract in this case does not include an insurance 
requirement quite as clear as the one in Getty, it is clear enough—it 
requires that ATOFINA “shall be named as additional insured in each of [Triple 
S’s] policies.” Evanston argues that this “brief statement” in 
the contract is insufficient to extend insured status to ATOFINA for its own 
negligence because the insurance requirement and certificates of insurance 
cannot expand coverage beyond the language of the policy.[48] While we agree that an insurance 
certificate merely evinces the holder’s status as an insured and does not create 
coverage,[49] it is unmistakable that the agreement in 
this case to extend direct insured status to ATOFINA as an additional 
insured is separate and independent from ATOFINA’s 
agreement to forego contractual indemnity for its own negligence. We 
disapprove the view that this kind of additional insured requirement fails to 
establish a separate and independent obligation for insuring liability.[50] We conclude that our Fireman’s 
Fund decision does not bar ATOFINA from obtaining insurance proceeds for 
losses resulting from its own negligence.
E
            
Next we examine Evanston’s obligation to pay $5.75 million of 
the $6.75 million settlement. Evanston argues 
that ATOFINA failed to meet its burden of showing that the amount was 
reasonable, and argues instead that its evidence proves the amount was 
unreasonable as a matter of law, entitling Evanston to summary judgment. ATOFINA asserts 
the opposite, contending that its summary judgment evidence proves the 
settlement amount was reasonable as a matter of law. Before reaching that 
question, we must address ATOFINA’s additional 
contention that Evanston’s denial of coverage bars it from 
challenging the reasonableness of the settlement.
            
Our last occasion to address this issue was Employers Casualty Co. v. 
Block,[51] in which we held that if an insurer 
wrongfully denies coverage and its insured then enters into an agreed judgment, 
the insurer is barred from challenging the reasonableness of the settlement 
amount.[52] Although this case presents some 
different facts, Block’s rule should apply nonetheless.
            
In Block, “[t]he basic issue before the trial court was the 
reasonableness of the damages recited in the agreed judgment” between the 
defendant roofing company and the plaintiff homeowners.[53] The Block court of appeals 
“concluded that once it was determined that [the insurer] wrongfully failed to 
defend its insured, [the insurer] was barred from collaterally attacking the 
final agreed judgment.”[54] Block addressed two questions 
concerning the effect of the agreed judgment between the plaintiffs and the 
defendant roofing company.[55] First, did the agreed judgment bar the 
insurer from contesting the reasonabless of damages?[56] Second, did the agreed judgment bar the 
insurer from contesting the agreed judgment’s factual recitations relating to 
coverage?[57] Block’s answer was clear:
 
While 
we agree with the court of appeals’ conclusion that [the insurer] was barred 
from collaterally attacking the agreed judgment by litigating the reasonableness 
of the damages recited therein, we do not agree with its conclusion that the 
recitation in the agreed judgment that the damage resulted from an occurrence on 
August 6, 1980 is binding and conclusive against [the insurer] in the present 
suit.[58]
 
 
            
In this case, the plaintiffs sued ATOFINA, ATOFINA requested coverage 
from Evanston, and Evanston wrongfully denied coverage, citing the 
policy terms. ATOFINA brought Evanston into the 
case as a third-party defendant for a declaration of coverage, and Evanston continued to deny 
coverage in its pleadings. ATOFINA then settled with the underlying plaintiffs 
and litigated the remaining coverage issues against Evanston. Though this case 
differs from Block in several respects, none of the differences justify 
departing from Block.
            
First, the forms of settlement and policy claims differ. Block’s 
insurer violated the policy’s duty to defend,[59] and while no duty to defend is 
implicated in this case, Evanston wrongfully denied all coverage under 
the policy.[60] In addition, Block’s plaintiff 
and defendant entered into an agreed judgment,[61] while ATOFINA and the wrongful death 
plaintiffs used a contractual settlement agreement and nonsuit. But neither the difference in policy claims nor the 
absence of a judgment memorializing the parties’ settlement disrupts the 
Block principles here because Block’s rule is not derived from the 
nature of the violated policy term or the formality of agreed judgments. The 
cases barring insurers’ challenges rest on principles of estoppel and waiver; what is most important in this context 
is notice to the insurer and an opportunity to participate in the settlement 
discussions.[62]
            
Some cases in this area bar an insurer’s invocation of policy provisions 
as a defense, not what we have here—an insurer’s invocation of the common law 
reasonableness requirement. However, the principles of notice to the insurer and 
an intentional choice to forego participation in settlement discussions operate 
the same no matter how the insurer chooses to attack the settlement. That is, 
the particular source of the insurer’s later-raised attack on the settlement 
amount—be it a policy provision or a common law rule—does not control our 
inquiry. One case cited by Block noted that, “[h]ad [the insurer] 
accepted the defense, it would have had, of course, the 
opportunity to conduct the defense in the manner most likely to have defeated 
the plaintiffs’ claim or at least to have reduced the amount of the damages.”[63] Had Evanston not unconditionally denied coverage, 
it too would have been able to influence the amount of the settlement.[64] For these reasons, the difference in 
policy claims and the absence of a formal judgment do not persuade us to abandon 
Block here.[65]
            
In addition, this case’s posture is different than Block’s. In 
Block, the underlying plaintiff sued the insurer as a judgment creditor, 
leading to some disapproval from this Court in State Farm Fire & Casualty 
Co. v. Gandy.[66] In Gandy, the Court said:
 
In no 
event, however, is a judgment for plaintiff against defendant, rendered without 
a fully adversarial trial, binding on defendant's insurer or admissible as 
evidence of damages in an action against defendant’s insurer by plaintiff as 
defendant’s assignee. We disapprove the contrary suggestion in dicta in 
Employers Casualty Company v. Block, 744 S.W.2d 940, 943 (Tex. 1988), and 
United States Aviation Underwriters, Inc. v. Olympia Wings, Inc., 896 
F.2d 949, 954 (5th Cir. 1990).[67]
 
 
            
Gandy does not disrupt the 
application of Block to this case for two reasons. First, this 
case does not fall within Gandy’s holding. Gandy’s holding 
was explicit and narrow, applying only to a specific set of assignments with 
special attributes.[68] By its own terms, Gandy’s 
invalidation applies only to cases that present its five unique elements.[69] Here, Gandy’s key factual 
predicate is missing: ATOFINA made no assignment of its claim against Evanston; ATOFINA sued Evanston directly.[70] That removes this case from the formal 
bounds of Gandy. Second, Gandy’s rationale does not require 
disapproving Block in this setting. Gandy’s reason for 
invalidating assignments was simple: Those assignments made evaluating the 
merits of a plaintiff’s claim difficult by prolonging disputes and distorting 
trial litigation motives.[71] But not all cases implicate 
Gandy’s concerns. “We should not invalidate a settlement that is free 
from this difficulty [of fairly evaluating a plaintiff’s claims] simply because 
it is structured like one that is not.”[72]
            
Barring Evanston’s challenge here does not implicate 
Gandy’s concerns. Preventing insurers from litigating the reasonableness 
of a settlement does not extend disputes; by definition, it shortens them. Nor 
is there a risk of distorting litigation or settlement motives here. ATOFINA 
settled without knowing whether or not it would be covered by the policy, 
leaving in place its motive to minimize the settlement amount in case it became 
solely responsible for payment.[73] To accomplish Gandy’s goal of 
“fairly determin[ing]” the 
value of plaintiffs’ claims, we apply the Block rule to this 
circumstance, which will encourage early intervention by the insurers who are 
best positioned to evaluate the worth of claims during settlement discussions. 
Thus, without relevant factual differences or Gandy concerns to dissuade 
us from following Block, we hold that Evanston’s denial of coverage barred it from 
challenging the reasonableness of ATOFINA’s 
settlement.[74] Evanston is, therefore, bound to pay the $5.75 
million that remains of the settlement.
F
            
Finally, Evanston argues that the court of 
appeals erroneously awarded ATOFINA 18% per annum of the claim amount and 
attorney’s fees for Evanston’s failure to promptly pay claims under 
article 21.55 of the Texas Insurance Code.[75] Under article 21.55, a court may impose 
damages “[i]n all cases where a claim is made pursuant 
to a policy of insurance and the insurer liable therefore is not in compliance 
with this article.”[76] “Claim” is defined as “a first party 
claim . . . that must be paid by the insurer directly to the insured or 
beneficiary.”[77] Evanston relies on the definition of “claim” in 
arguing that the statute does not apply to claims for reimbursement of 
settlement costs in the context of a liability insurer’s denial of indemnity for 
a third-party claim against its insured.
            
Though the statute does not define first-party claims, we distinguish 
first-party and third-party claims based on the claimant’s relationship to the 
loss.[78] “[A] first-party claim is stated when 
‘an insured seeks recovery for the insured’s own loss,’ whereas a third-party 
claim is stated when ‘an insured seeks coverage for injuries to a third 
party.’”[79] A loss incurred in satisfaction of a 
settlement belongs to the third party and is not suffered directly by the 
insured.[80] This case in which ATOFINA seeks 
coverage for injuries sustained by a third party presents a classic third-party 
claim. Because the Legislature intended that article 21.55 apply to claims 
personal to the insured,[81] ATOFINA is not entitled to the article 
21.55 damages or attorney’s fees. We therefore reverse the portion of the court 
of appeals’ judgment pertaining to article 21.55 damages and attorney’s fees and 
render judgment that ATOFINA recovers no attorney’s fees or damages under 
article 21.55.
III
            
We affirm the court of appeals’ holding that ATOFINA is an insured under 
the Evanston insurance policy and is thus 
entitled to coverage for the Jones litigation settlement, and we affirm the 
court of appeals’ holding that Evanston is bound to pay the $5.75 million 
settlement amount. We reverse the court of appeals’ judgment permitting ATOFINA 
to recover attorney’s fees and damages under article 21.55 of the Texas 
Insurance Code and render judgment that ATOFINA is entitled to no such damages 
or fees.
 
            
_____________________________
            
PAUL W. GREEN
            
JUSTICE
 
OPINION DELIVERED: February 15, 
2008








[1] 
ATOFINA is the successor company to FINA Oil and Chemical Company, which 
originally executed the independent contractor agreement with Triple S. For 
purposes of this opinion, we shall refer to FINA and ATOFINA, without 
distinction, as ATOFINA.

[2] 
104 S.W.3d 247, 251–52 (Tex. App.—Beaumont 2003) (per curiam). 

[3] 
490 S.W.2d 818 (Tex. 1972).

[4] 
See id.

[5] 
We have held that an indemnity agreement will not be construed to cover an indemnitee’s sole negligence absent express language to that 
effect. Id. 
at 822. Evanston urges us to take this rule and apply 
it to additional insured provisions as well. However, we have also noted that 
where an additional insured provision is separate from and additional to an 
indemnity provision, the scope of the insurance requirement is not limited by 
the indemnity clause. See Getty Oil Co. v. Ins. Co. of N. 
Am., 845 S.W.2d 794, 804 (Tex. 1992). In fact, we specifically 
declined to extend the rule in Fireman’s Fund to contractual provisions 
other than indemnity agreements. Id. at 
806.

[6] 
832 S.W.2d 427, 428 (Tex. App.—Amarillo 1992, no writ).

[7] 
Id. 
Several courts recognize no material difference between the common term 
“arising out of operations” and the Evanston policy term “with respect to 
operations.” See McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co., 7 S.W.3d 725, 730 n.8 (Tex. 
App.—Austin 1999, no pet.); Miller v. Superior Shipyard & Fabrication, 
Inc., 2001-2907, p. 5–6 (La. App. 1 Cir. 8/20/03); 859 So. 2d 159, 162–64; 
Acceptance Ins. Co. v. Syufy Enters., 81 Cal. 
Rptr. 2d 557, 561–62 (Cal. Ct. App. 1999); Lim v. 
Atlas-Gem Erectors Co., 638 N.Y.S.2d 946, 946–48 (N.Y. App. Div. 1996); 
Fla. Power & Light Co. v. Penn Am. Ins. Co., 654 So. 2d 276, 279 (Fla. Dist. Ct. App. 1995). We cite cases 
addressing both terms because, even if there is a difference, whatever qualifies 
as “arising out of operations” also qualifies under “with respect to 
operations,” the broader term.

[8] 
Granite, 832 S.W.2d at 430.

[9] 
Id. 
According to the court:
 
Under the Granite-Brown contract, the loading operation 
was the sole obligation of Granite, and Brown was not responsible for that 
operation. Measuring the policy coverage provided Granite by the allegations in 
Valchar’s petition, it is at once obvious that Valchar’s claim of Granite’s liability arose out of the 
loading operations performed by Granite; it was not a claim “arising out of 
operations performed for [Granite] by or on behalf of [Brown],” the only 
operations for which Granite was insured.
 
Id.; see also N. Ins. Co. of N.Y. v. Austin Commercial, 
Inc., 908 F. Supp. 436, 437 (N.D. Tex. 1994) (applying Granite to 
slip-and-fall cases).

[10] Admiral Ins. Co. v. Trident NGL, 
Inc., 988 S.W.2d 451, 453–54 (Tex. App.—Houston [1st Dist.] 1999, pet. 
denied) (emphasis omitted); McCarthy, 7 S.W.3d at 727 & n.4 (emphasis 
omitted).

[11] 988 S.W.2d at 
455.

[12] 7 S.W.3d at 
730–31.

[13] 832 S.W.2d at 
430.

[14] GuideOne Elite Ins. Co. v. Fielder Rd. Baptist 
Church, 197 S.W.3d 305, 307–08 (Tex. 2006) (citing King v. Dallas Fire 
Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002), and Nat’l Union Fire Ins. Co. 
of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 
(Tex. 1997)). In this case, the principles triggering the insurer’s duty to 
defend apply equally to the insurer’s duty to indemnify.

[15] See Admiral, 988 S.W.2d at 
454–56; McCarthy, 7 S.W.3d at 729–31 & n.9; Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 
487, 496–500 (5th Cir. 2000).

[16] Mid-Century Ins. Co. of Tex. v. 
Lindsey, 997 S.W.2d 153, 155–56 (Tex. 1999) (determining whether “injuries 
were caused by an accident arising out of the use of [a] truck”); accord 
Admiral, 988 S.W.2d at 454–56; McCarthy, 7 S.W.3d at 729–31; 
see also Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 201–03 (Tex. 2004) 
(contrasting “arising out of” with “‘due to,’ [which] requires a more direct 
type of causation that could tie the insured's liability to the manner in which 
the services were performed.”).

[17] Admiral, 988 S.W.2d at 454–56 (“[I]t 
is sufficient that the named insured’s employee was injured while present at the 
scene in connection with performing the named insured's business, even if the 
cause of the injury was the negligence of the additional insured.”); 
McCarthy, 7 S.W.3d at 729–31; Highland Park Shopping Vill. v. Trinity Universal Ins. 
Co., 36 S.W.3d 916, 918 (Tex. App.—Dallas 2001, no pet.). Our causation 
analysis is limited to these facts. Because the premises itself caused 
the injury in this case, we do not decide what level of causation, but-for or 
otherwise, would be required in a case where the additional insured’s premises 
is merely the situs of the injury.

[18] Admiral, 988 
S.W.2d at 454–56; McCarthy, 7 S.W.3d at 729–31; Highland Park, 36 
S.W.3d at 917–18.

[19] See The Random House Dictionary of the English 
Language 1640 (Stuart Berg Flexner ed., 2d ed. unabr. 1987) (With respect to: “with respect to: referring 
to: concerning”); 2 The Compact Edition 
of the Oxford English Dictionary 2512 (1971) (With respect: “with 
reference or regard to something.”).

[20] McIntosh v. Scottsdale Ins. Co., 
992 F.2d 251, 255 (10th Cir. 1993) (quoting Philadelphia Elec. Co. v. 
Nationwide Mut. Ins. Co., 721 F. Supp. 740, 742 
(E.D. Pa. 1989)); accord Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 
228–29 (5th Cir. 2000) (“[The insurer] easily could have limited coverage by 
including in the endorsement terms such as ‘vicarious liability’ or ‘negligence 
of the named insured.’”).

[21] See Mid-Continent, 206 F.3d 
at 497–99 (observing that “Admiral and McCarthy . . . are 
consistent with the majority view in other jurisdictions”); Steven D. Caley, et al., The Scope of Additional Insured Coverage – 
A State Survey, in Insurance 
Law 2006: Understanding the ABC’s, at 149 (PLI Litig. & Admin. Practice, Course Handbook Series No. 
741, 2006) (collecting cases); Douglas R. Richmond, The Additional Problems 
of Additional Insureds, 33 Tort & Ins. L.J. 945, 956–65 (1998) 
(collecting cases and finding that the “liberal interpretation of the additional 
insured endorsement is fast becoming the majority rule”).

[22] See Nat. Union Fire Ins. Co. of 
Pittsburgh, Pa., 939 S.W.2d at 141 (“[T]he general rule is that the insurer 
is obligated to defend if there is, potentially, a case under the complaint 
within the coverage of the policy.”).

[23] ATOFINA contends Evanston waived any 
argument regarding the impact of “following form” language in the insurance 
purchasing agreement by failing to raise this point in its cross-motion for 
summary judgment. While Evanston did not 
articulate this argument in precisely the same form as it is enunciated here, we 
note that Evanston did, in fact, argue before the trial 
court that the scope of its policy was bounded by the sole-negligence exclusion 
contained in the Admiral CGL policy. Furthermore, as the party that prevailed in 
the trial court, Evanston was not required to raise this issue 
before the court of appeals, as we do not normally require a party defending a 
judgment to raise every alternative theory on which the trial court could base 
its action. See Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990).

[24] Endorsement 20 to the Admiral CGL policy, 
which has the same effective date as the Admiral policy itself, supports this 
interpretation. It states: 
WHO IS AN INSURED (Section II) is amended to include as 
an Insured [ATOFINA] but only with respect to liability arising out of [Triple 
S’s] ongoing operations performed for [ATOFINA], but in no event for [ATOFINA’s] sole negligence.

[25] Nat’l Union Fire Ins. Co. of Pittsburgh, 
Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). 

[26] Id.

[27] Evanston argues that section III.B.5’s use of 
“under this policy” rather than “under this provision” expressly 
limits coverage regardless of the scope of coverage that may apply under another 
provision within paragraph III.B. We disagree. Such a reading would render any 
broader coverage provided by the Evanston policy illusory by always limiting 
coverage to the scope of the Admiral policy. We cannot adopt a construction that 
renders any portion of a policy meaningless, useless, or inexplicable. 
ATOFINA Petrochemicals, Inc. v. Cont’l Cas. Co., 185 S.W.3d 440, 444 
(Tex. 2005) (per curiam) (rejecting policy construction that would render 
coverage illusory); Kelley-Coppedge, Inc. v. 
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998); Balandran 
v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998).

[28] 490 S.W.2d 818 (Tex. 1972).

[29] Id. at 822–23.

[30] Id. at 820.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 822.

[35] Id. at 823.

[36] Id. at 822–23.

[37] Id. at 821.

[38] Id.

[39] Id.

[40] Id. at 823.

[41] Id.

[42] 845 S.W.2d 794 (Tex. 1992).

[43] Id. at 796.

[44] Id. at 804.

[45] Tex. Civ. Prac. & Rem. 
Code §§ 
127.001–.007.

[46] Getty Oil, 845 
S.W.2d at 804.

[47] Id. (“[T]he additional insured 
provision of the contract does not support the indemnity agreement, but rather 
is a separate obligation.”).

[48] See Granite Const. Co. v. Bituminous 
Ins. Cos., 
832 S.W.2d 427, 429 (Tex. App.—Amarillo 1992, no writ).

[49] See id.

[50] See Emery Air Freight Corp. v. Gen. 
Transp. Sys., Inc., 933 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 
1996, no writ).

[51] 744 S.W.2d 940 (Tex. 1988).

[52] Id. at 943.

[53] Id. at 942.

[54] Id.

[55] Id. at 943.

[56] Id.

[57] Id. The dispute between ATOFINA and 
Evanston 
concerns only the reasonableness of the settlement amount, and not any factual 
assertions within the settlement agreement text.

[58] Id. (emphasis added) (citations 
omitted); see also W. Alliance Ins. Co. v. N. Ins. Co. of N.Y., 176 F.3d 
825, 830 (5th Cir. 1999) (citing Block, 744 S.W.2d at 943) (“If an 
insurer breaches the duty to defend, it may not contest a determination that its 
insured was liable in the underlying settlement or verdict (or the amount of 
either).”); Enserch Corp. v. Shand Morahan & Co., 952 F.2d 1485, 1495–96 (5th Cir. 
1992) (“Texas law denies insurers like these a collateral attack on the 
settlement itself. . . . Recent opinions of both this Court and the Texas 
Supreme Court have confirmed that, unlike a request for allocation, an attempt 
to contest the reasonableness of a consent judgment entered into between the 
insured and an injured third party is unavailable to an insurer who has 
wrongfully breached its duty to defend.”).

[59] 744 S.W.2d at 
942.

[60] The dissent suggests that Evanston never breached 
any duty owed to ATOFINA. ___ S.W.3d at ___. Yet on 
multiple occasions before the settlement, Evanston explicitly rejected ATOFINA’s claim for coverage under the policy. Evanston first denied 
ATOFINA’s request for coverage by letter, and then 
consistently asserted the same in its pleadings throughout the coverage suit. 
Even if this conduct does not amount to an anticipatory breach of the contract, 
which it very well might, see Murray v. Crest Constr., Inc., 900 
S.W.2d 342, 344 (Tex. 1995); Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515 (Tex. 1998), 
this kind of explicit, unqualified rejection of coverage surely operates to 
trigger the equitable principles in Block.

[61] 744 S.W.2d at 
942.

[62] See Gulf Ins. Co. v. Parker Prods., 
Inc., 498 S.W.2d 676, 679 (Tex. 1973); 
Womack v. Allstate Ins. Co., 296 S.W.2d 233, 237 (Tex. 1956); see also St. Louis Dressed Beef & 
Provision Co. v. Md. Cas. Co., 201 U.S. 173, 181 (1906) (“Moreover, the 
[insurer], by its refusal [to defend], cut at the very root of the mutual 
obligation, and put an end to its right to demand further compliance with the 
supposed term of the contract on the other side.”); Benjamin v. Amica Mut. Ins. Co., 2006 UT 
37, ¶ 29, 140 P.3d 1210, 1216; Liberty Mut. Ins. Co. v. Wheelwright Trucking 
Co., 851 
So. 2d 466, 476–78 (Ala. 2002); D.E.M. v. Allickson, 555 N.W.2d 596, 599–601 (N.D. 1996); Red 
Giant Oil Co. v. Lawlor, 528 N.W.2d 524, 531–32 
(Iowa 1995); Fireman’s Fund Ins. Co. v. Sec. Ins. Co. of Hartford, 367 
A.2d 864, 867–73 (N.J. 1976); Theodore v. Zurich Gen. Accident & Liab. Ins. Co., 364 P.2d 51, 55 (Alaska 1961); Albert v. Me. Bonding & Cas. Co., 64 A.2d 27, 29–30 
(Me. 
1949). We cite these additional cases for their use of the equitable 
waiver and estoppel decision frameworks generally, but 
not for their opinions of how the equitable balance should be struck.

[63] Ranger Ins. Co. v. Rogers, 530 S.W.2d 
162, 167 (Tex. Civ. App.—Austin 1975, writ ref’d n.r.e.).

[64] Admiral tendered its $1 million before the 
settlement, invoking Evanston’s duties as an excess insurer. The 
Evanston policy gave Evanston the right to 
“associate with the insured in the defense and control of any ‘claim’ or ‘suit’ 
that we think may involve this policy.” Cf. Keck, Mahin & Cate v. Nat. Union 
Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692, 701 (Tex. 2000) (supporting 
an excess insurer’s right to “interject itself into settlement negotiations 
before tender by the primary insurer”).

[65] The dissent cites United States Aviation 
Underwriters, Inc. v. Olympia Wings, Inc., 896 F.2d 949 (5th Cir. 1990), for 
the proposition that “an insurer that does have a duty to defend is not 
estopped to contest the reasonableness of a 
settlement.” ___ S.W.3d at ___. Though the Fifth Circuit did so hold, the 
dissent misapplies that case. Unlike Evanston, the insurer in that case offered 
to supply the policy benefit (in that case, the duty to defend) under a 
reservation of rights. U.S. Aviation 
Underwriters, 896 F.2d at 952. More importantly, 
unlike ATOFINA, the insured in that case rejected the insurer’s offer. 
Id. As 
a result of those two facts, the Fifth Circuit explicitly distinguished its case 
from Block and other cases where a defense is neither tendered nor 
rejected. Id. at 
954–55. For those latter situations, the Fifth Circuit concluded that 
“under Texas 
law an insurer which is obliged to defend its insured but flatly refuses to do 
so . . . cannot contest the reasonableness of a consent judgment agreed to 
between the insured and the injured party.” Id. at 955. Thus, United States Aviation Underwriters 
supports our holding today, not the opposite.

[66] 925 S.W.2d 696 (Tex. 1996).

[67] Id. at 714.

[68]                           
We hold that a defendant’s assignment of his claims against his insurer 
to a plaintiff is invalid if (1) it is made prior to an adjudication of 
plaintiff’s claim against defendant in a fully adversarial trial, (2) 
defendant’s insurer has tendered a defense, and (3) either (a) defendant’s 
insurer has accepted coverage, or (b) defendant’s insurer has made a good faith 
effort to adjudicate coverage issues prior to the adjudication of plaintiff’s 
claim.
 
Id. “We do not address whether an assignment is invalid 
when any element of the rule is lacking, such as when an insurer has not 
tendered a defense of its insured.” Id. at 719.

[69] Id. at 715 (“In the present case we 
have focused on the validity of the assignment.”).

[70] In addition, Evanston never tendered a defense, a fact 
Gandy purported to rely upon. See id. at 714.

[71] Id. at 707–19.

[72] Id. at 714. Even when it addressed 
assignments, Gandy did not present an absolute rule: “Not every 
settlement involving an assignment of rights in exchange for a covenant to limit 
the assignor’s liability has the problems we have described.” Id.

[73] Cf. Guillen ex rel. Guillen v. 
Potomac Ins. Co. of Ill., 785 N.E.2d 1, 14 (Ill. 2003) (“[T]he risk of 
collusion and fraud can be lessened . . . , if not avoided altogether, by 
placing a requirement upon the plaintiff to prove that the settlement it reached 
with the insured was reasonable before that settlement can have any binding 
effect upon the insurer.”).

[74] The denial does not bar Evanston from challenging 
coverage. See Utica Nat’l Ins. 
Co. of Tex. v. 
Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) 
(“Even if a liability insurer breaches its duty to defend, the party seeking 
indemnity still bears the burden to prove coverage if the insurer contests 
it.”); Block, 744 S.W.2d at 943–44.

[75] The “Prompt Payment of Claims” statute has 
been recodified without substantial change. See 
Tex. Ins. Code §§ 542.051–.061; 
Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, ___ 
(Tex. 
2007). For purposes of this opinion, we refer to article 21.55.

[76] Tex. Ins. Code art. 21.55 
§ 6.

[77] Id. § 1.

[78] Lamar Homes, 242 S.W.3d at 
___. 

[79] Id. 
(quoting Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 54 n.2 (Tex. 1997)).

[80] Id.

[81] Id. at 
___.